Sufficiency of the Evidence [3]
In accordance with the well-settled jurisprudence that "[w]hen issues are *1116 raised on appeal as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence."[4] In reviewing whether the evidence presented in a case is sufficient to support a conviction, we are governed by the standard set forth in the United States Supreme Court decision of Jackson v. Virginia .[5]
The standard is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found all of the essential elements of the offense proven beyond a reasonable doubt. "The Jackson doctrine involves more than simply applying a fixed standard to measure the simple quantum of the evidence produced in a case."[6] A sufficiency of evidence review does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt."[7] "The inquiry requires the reviewing court to ask whether the trier of fact interpreting all of the evidence in this manner could have found the essential elements of the crime beyond a reasonable doubt."[8]
The reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.[9] A reviewing court is neither permitted to second guess the rational credibility determinations of the fact finder at trial, nor is it to consider the rationality of the thought processes employed by a particular fact finder in reaching a verdict.[10] It is not the function of an appellate court to assess credibility or reweigh the evidence.[11]
Simple Robbery
In order to convict Defendant of simple robbery, the State had to prove that he: (1) took something of value; (2) belonging to another; (3) from the person of another; (4) by use of force or intimidation.[12]
At trial, Reed Sutton (the victim) testified that on September 2, 2014, he was drinking and socializing with Defendant and "Cody" in the French Quarter in New Orleans; he had known both men for a few months. He later accompanied Defendant and "Cody" to a French Quarter hotel to complete a pre-arranged narcotics purchase.[13] When the three men arrived at their destination, the victim decided that the price of the drugs was more than he was willing to pay; consequently, he refused to make the purchase and attempted to walk away. However, "Cody" placed him in a choke hold while Defendant stole his cash and wrist watch.
*1117 The testimony elicited at trial further established that the victim reported the incident to NOPD Officer Thomas Perez (Officer Perez) at the Eighth District Police Station. Officer Perez's investigation revealed that "Cody" was Cody Bergeron ("Bergeron"), a known associate of Defendant. When Officer Perez showed the victim booking photos of Defendant and Bergeron, the victim confirmed they were the men who robbed him thirty (30) minutes earlier. Further investigation failed to reveal any witnesses or surveillance video of the incident. Officer Perez obtained arrest warrants for Defendant and Bergeron.
Additionally, the State called Richard Traube ("Traube"), who testified relative to the State's Prieur notice concerning Defendant's and Bergeron's[14] guilty pleas to the second degree robbery of Traube in 2009. The State's purpose in introducing the 2010 conviction was to show the proximity of the crime scenes, the targeting of vulnerable victims, and the forceful taking of property from the victims.
Traube testified that he was drinking and talking with Bergeron in the Roundup Bar in the French Quarter in 2009. Traube and Bergeron agreed that in exchange for payment, Bergeron would engage in a sexual act with Traube. After the act, Traube refused to pay Bergeron. When Traube left the bar, Bergeron and Defendant beat and robbed him.
Under the Jackson standard, we find there was sufficient evidence for the jury to return a verdict of guilty on the simple robbery charge.
Intimidating a Witness
To uphold a conviction for intimidating a witness, the State was required to prove that Defendant intimidated or impeded, by threat of force or force, or attempted to intimidate or impede, by threat of force or force, a witness with intent to influence his testimony, his reporting of criminal conduct or his appearance at a judicial proceeding. La. R.S. 14:129.1 defines the term "witness" to include a person who is a victim of criminal conduct, a person who has testified in court under oath, a person who has reported a crime, and a person who has been served with a court subpoena.
The victim also testified that on the night of September 27, 2014, he and "Katy," Defendant's ex-girlfriend, were in the Roundup Bar in the French Quarter. Defendant was in the bar as well and confronted the victim with a knife and threatened to kill him. The victim ran to a friend's apartment and was driven to the Eighth District Police Station.
The victim reported to NOPD Detective Steve Nolan ("Detective Nolan") at the Eighth District Police Station that Defendant had pulled a knife on him and threatened him at the Roundup Bar. The victim said Defendant threatened to kill him if he did not drop the robbery complaint he filed. Detective Nolan was unable to locate any witnesses to the knife incident, but did obtain a warrant for Defendant's arrest, which Officer Jason Collins executed after receiving a tip that Defendant was at the Old Town Inn.
Anthony Henry ("Henry"), the manager/bartender on duty at the Roundup Bar on the night of September 27, 2014, testified that the victim and Defendant had an altercation in the bar. He claimed that he did not see any physical contact or a weapon, but he ejected the victim from the bar due to safety concerns. Although Henry did not witness certain details of the interaction between the men, his testimony supports *1118 the confrontation and ensuing argument.
Also, at trial, the jury heard the testimony of Jim Huey ("Huey") of the Orleans Parish Sheriff's Department. Huey is the custodian of the records of inmate telephones calls. Huey explained that inmate phone calls are recorded by an internet-based system and stored on a secure database. One of Huey's duties is to provide law enforcement agencies copies of those jailhouse telephone calls. Huey further explained that when an inmate makes a call from the Orleans Parish Prison, the inmate is issued a warning that the call will be monitored and recorded. Huey testified that a call detail sheet, which lists the specifics of an inmate call, accompanies the recording of jailhouse calls.
Pursuant to the State's request, Huey supplied a disc containing a recording of a jailhouse call made by Defendant, which was played for the jury. In the call, Defendant tells the victim he will not be arrested if he fails to appear at trial. Moreover, Defendant stresses that the only way the charges against him "will go away" is if the victim fails to testify.
Again, reviewing the evidence under the Jackson standard we find the jury had sufficient evidence to return a guilty verdict for the crime of intimidating a witness.
Motion for New Trial [15]
In this assignment, Defendant maintains that a motion for new trial should have been granted based on newly discovered evidence. More specifically, that Veronica Smith's statement warranted the granting of a new trial.
Here, the motion for new trial is based primarily on the defense's inability to present the statement of Veronica Smith ("Smith"). Smith was the girlfriend of Bergeron. She claimed that she witnessed the robbery and Defendant was not involved. The trial court visited this issue during trial. At that time, Defendant contended that Smith, who had not been served and was not present to testify, should be declared an unavailable witness. As an unavailable witness, Defendant sought to have a statement by Smith that had been given to defense counsel's investigator admitted into evidence through the investigator's testimony.
The trial court first found that Smith did not qualify as an unavailable witness.[16] Next, the trial court determined that even if the witness was unavailable the statement would not be admissible evidence *1119 because the statement was not written by Smith. Rather, it was a narrative representing Smith's statement written by the investigator. Additionally, Smith was not under oath, there was no video or audio recording of the statement, and although it was signed by Smith, it was not notarized. Considering those aspects of the document, the trial court concluded that the statement would not be covered under any of the hearsay exceptions in La. C. E. art. 804(B) and therefore would not be admissible.[17]
At the hearing on the motion for new trial, Defendant presented evidence to prove that Smith was, in fact, an unavailable witness at the time of trial. That evidence included Smith's affidavit that stated she was kidnapped by Bergeron and taken to Mississippi where they were detained by police and arrested for various charges unrelated to this case. Once she was released from jail Smith returned home. Smith also recounted the night of the incident and claimed that Defendant was not involved and Bergeron acted alone. Further, Smith provided testimony and was cross-examined at the hearing. The trial court denied the motion for new trial.
Smith's affidavit and testimony were similar to the statement she had given to the investigator. The newly discovered information was the allegations of kidnapping and the subsequent arrest, which resulted in her being unavailable.[18] In sum, defendant seeks a new trial so that Smith can testify.
To obtain a new trial based on newly discovered evidence, defendant must show "(1) the new evidence was discovered after trial; (2) the failure to discover the evidence at the time of trial was not caused by lack of diligence; (3) the evidence is material to the issues at trial; and (4) the evidence is of such a nature it would probably have produced a different *1120 verdict."[19] In evaluating whether newly discovered evidence warrants a new trial, the test is not simply whether another jury might bring in a different verdict, but whether the new evidence is so material it ought to produce a different verdict. A district court's decision on a motion for new trial based on newly discovered evidence, although a question of law, is entitled to great weight and should not be disturbed on review if reasonable persons could differ as to the propriety of the decision.[20]
Although defendant characterizes Smith as a witness to the robbery, it is clear that even taking her testimony as true she never entered the hotel where the robbery occurred. Smith has no knowledge of whether defendant was present inside the building. For that reason, Smith's testimony cannot be considered "of such a nature that would produce a different verdict." This Court finds no error in the denial of the motion for new trial.
Prosecutorial Misconduct [21]
In this assignment of error, Defendant alleges that the State was aware that the victim gave perjured testimony at trial, and the State misrepresented facts in closing argument.
First, Defendant contends that while testifying the victim failed to disclose numerous crimes that he was not prosecuted for. Thus, his testimony was so tainted it should not have been presented to the jury. No evidence exists in the record to support this assignment of error. The victim was cross-examined and admitted to his prior drug use, that he lied to the police that he was buying marijuana rather than methamphetamine, and his criminal history as a convicted felon. The jury heard this evidence.
Next Defendant complains of facts that were not in evidence being presented to the jury in closing argument. Specifically, the State told the jury: "Mr. Traube, at the time, seventy-three years old, was beaten bloody-his own words-by Cody Bergeron and Desmond Parker both of whom pled guilty to the crime."
The record reveals that the Prieur witness, Traube, testified that he was beat up and robbed by Defendant. Traube specifically stated at trial: "[H]e followed me up to my car and beat the tar out of me and robbed me, took my wallet."
In State v. Smith, 11-0091, p. 28 (La.App. 4 Cir. 7/11/12), 96 So.3d 678, 694-95, writ denied, 12-2069 (La. 3/15/13), 109 So.3d 375, we stated:
Louisiana jurisprudence on prosecutorial misconduct allows prosecutors wide latitude in choosing closing argument tactics. Even assuming that remarks were inappropriate, a conviction will not be reversed due to an improper remark during closing argument unless the court is thoroughly convinced that the remark influenced the jury and contributed to the verdict. Much credit should be accorded to the good sense and fair-mindedness of jurors who have seen the evidence and heard the arguments, and have been instructed by the trial judge that arguments of counsel are not evidence.[22]
*1121 This Court recognizes that the State did not quote Traube's words verbatim. However, we also note, that the defense counsel did not object to the State's statement. The record fails to contain any evidence of prosecutorial misconduct.
Ineffective Assistance of Counsel [23]
Defendant's next assignment of error is that he received ineffective assistance of counsel.
An ineffective assistance of counsel claim is often most appropriately addressed through an application for post-conviction relief filed in the trial court where a full evidentiary hearing can be conducted.[24] However, "an evidentiary hearing is not necessary where the record on appeal is sufficient to permit a determination of counsel's effectiveness at trial."[25] In the instant matter, the record contains no evidence to rule on Defendant's ineffective of assistance claim. Accordingly, we decline to consider this assignment of error. Defendant may raise this argument should he file an application for post-conviction relief.
State's Writ Application
At the multiple-bill and sentencing hearing, Defendant challenged a previous guilty plea from Jefferson County, Alabama. Defendant argued that the evidence provided by the State was insufficient to establish that Defendant's prior guilty plea was knowing, voluntary, and made with an express waiver of his rights. The trial court determined that the State failed to prove that the guilty plea was in accordance with Boykin v. Alabama .[26] We agree.
It is well established that the validity of a guilty plea turns on whether Defendant was informed of three fundamental constitutional rights ( Boykin rights): 1) his privilege against compulsory self-incrimination, 2) his right to trial by jury, and 3) his right to confront his accusers. Additionally, the record must also show that after being informed of those Boykin rights, Defendant knowingly and voluntarily waived them.[27]
The Supreme Court adopted a scheme for burdens of proof in habitual offender proceedings in State v. Shelton , which it summarized as follows:
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and the defendant wherein the *1122 defendant was informed of and specifically waived his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that the defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights.[28]
In Shelton , the State submitted into evidence a minute entry that stated the judge "gave the defendant his rights" and a "Waiver of Constitutional Rights/Plea of Guilty Form" ("the form"). The form listed the Boykin rights with Defendant's initials behind each indicating that he waived the right. The form had additional statements providing that Defendant was well informed of the consequences of his plea. The form was signed by Defendant, the attorney for Defendant, and the trial judge. Considering that evidence, the Supreme Court found that the State met its burden of proving the guilty plea was informed, free and voluntary, and made with an articulated waiver of constitutional rights.[29]
In the instant case, the record is void of any indication that Defendant knowingly and voluntarily waived each of his Boykin rights. The Alabama Judicial Information System Case Action Summary submitted to the trial court contains entries signed by the Alabama Circuit Judge of the Tenth Judicial Circuit of Alabama. One of the entries states that Defendant waives a jury trial. There is no other reference to Defendant waiving rights and nowhere does he sign or initial any statement of waiver or waiver form. The State cannot overcome the lack of an articulated waiver of Defendant's constitutional rights without a transcript.
As the Louisiana Supreme Court discussed in Shelton , when the State introduces anything less than a "perfect transcript" to prove the validity of a previous guilty plea, the trial judge must weigh the evidence to determine whether the State met its burden. In this case, the trial judge reviewed the evidence presented by the State and found it was deficient. Given the record before this Court, that ruling should be affirmed. For that reason, the State's writ application seeking to adjudge Defendant as a fourth felony offender is denied.
Conclusion
For the reasons discussed, Desmond Parker's convictions and sentences are affirmed and the State's writ application is denied.
AFFIRMED; WRIT DENIED
LOBRANO, J., CONCURS IN PART, DISSENTS IN PART, AND ASSIGNS REASONS
LOBRANO, J., CONCURS IN PART, DISSENTS IN PART, AND ASSIGNS REASONS.
I respectfully concur in the majority's opinion affirming Defendant's convictions. However, I part ways with the majority in that I would grant the State's writ application and find Defendant a fourth felony offender.
The State filed two multiple bills against Defendant. The first multiple bill was filed on June 3, 2015 in case no. 523-182, charging *1123 Defendant as a fourth felony offender based on his May 19, 2015, conviction for tampering with an electric monitor in Orleans Parish Criminal District Court with alleged prior convictions: (1) a conviction on July 25, 2005, in Jefferson County, Alabama, for third degree burglary (case no. 2005-2611); (2) a conviction on April 28, 2011, in Jefferson Parish Louisiana, for attempted simple escape and simple criminal damage (case no. 2009-3142); and (3) a conviction on June 4, 2010, for second degree robbery in Orleans Parish Criminal District Court (case no. 491-945). The second multiple bill, filed September 22, 2016, charged Defendant as a fourth felony offender based upon the January 25, 2016, convictions for simple robbery and intimidating a witness, which are the subjects of the present appeal, in addition to the convictions outlined above.
After a September 22, 2016, combined hearing on the multiple bills, the court adjudged Defendant a third, rather than fourth, felony offender, finding that the State failed to prove that Defendant's guilty plea in Alabama case was in compliance with Boykin v. Alabama , 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).
To obtain a multiple offender conviction, the State is required to establish both the prior felony conviction and that Defendant is the same person convicted of that felony. State v. Payton, 00-2899, p. 6 (La. 3/15/02), 810 So.2d 1127, 1130. Various methods are available to prove that Defendant is the same person convicted of the prior felony offense: testimony from witnesses, expert opinion regarding the fingerprints of Defendant when compared with those in the prior record, or photographs in the duly authenticated record. State v. Wolfe, 99-0389, pp. 4-5 (La. App. 4 Cir. 4/19/00), 761 So.2d 596, 599-600. The Supreme Court adopted a scheme for burdens of proof in habitual offender proceedings in State v. Shelton, 621 So.2d 769, 779-80 (La. 1993), which it summarized as follows:
If the Defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that Defendant was represented by counsel when they were taken. If the State meets this burden, the Defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the Defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and Defendant wherein the Defendant was informed of and specifically waived his right to trial by jury, his privilege against self incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the Defendant and by the State to determine whether the State has met its burden of proving that Defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights.
At the multiple bill hearing, the State introduced the testimony of Officer George Jackson, a certified latent print examiner, who testified that he had taken Defendant's fingerprints earlier in the proceedings. Jackson identified State's exhibit 1 as the card containing those fingerprints. Further, Jackson identified State's exhibit 2 as the pen pack pertaining to Defendant's guilty plea to burglary and assault in Alabama bearing case no. 2005-02611.
*1124 Included in the pen pack was a certified copy of Defendant's fingerprints, which Jackson testified matched the fingerprints on State's exhibit 1. Jackson identified other documents in the Alabama pen pack as an Alabama Judicial Information System Case Action Summary, State's exhibit 3, evidencing Defendant's guilty plea and attesting to Defendant's waiver of rights incident to that guilty plea.
Defense counsel objected to the legal sufficiency of the Alabama plea because the document was not certified/notarized; did not contain a valid waiver of rights in the absence of specific mention of which rights were read to him; and contained an incomplete Boykin form, which resulted in insufficient proof that Defendant knowingly and intelligently entered the guilty plea.[1]
After examining the guilty plea and entertaining argument from the State and defense, the district court agreed with defense counsel. The district court concluded that because "there [wa]s no plea form in th[e] record," only "a form that [wa]s filled out by the judge," the State was required to produce a transcript of the Boykin colloquy, which the State did not do.
After examining Defendant's Alabama guilty plea, I find that the district court erred when it refused to find that a valid plea had been proven by the State and adjudge Defendant a fourth felony offender.
Contained in the Alabama pen pack is a plea form signed by Defendant, his attorney, and the court, on July 25, 2005. The plea form was apparently on legal-sized paper in its original state, but was copied on letter-sized paper. It advises Defendant of all his rights and that by pleading guilty, he waived those rights. Defendant was represented by counsel during all of his court appearances. The entire pen pack is certified by its legal custodian, the Director of Central Records for the State of Alabama Department of Corrections. In addition, the Director's signature is notarized.
I find that the Alabama pen pack more than satisfies the requirements of Louisiana law proving that Defendant was advised of his rights and knowingly and intelligently entered the guilty plea. My finding is supported by many cases from this court. See State v. Golden, 13-0012 (La.App. 4 Cir. 10/30/13), 126 So.3d 829 ; State v. Henry, 12-1093 (La.App. 4 Cir. 9/4/13), 124 So.3d 1108 ; State v. Weaver, 99-2177 (La.App. 4 Cir. 12/6/00), 775 So.2d 613 ; State v. Stanfield, 13-1193 (La.App. 4 Cir. 3/26/14), 137 So.3d 788 ; State v. Taylor, 12-0114 (La.App. 4 Cir. 11/28/12), 104 So.3d 679 ; State v. Sims, 13-0177 (La.App. 4 Cir. 8/28/13), 123 So.3d 806 ; and State v. Tatten, 12-0443 (La.App. 4 Cir. 5/1/13), 116 So.3d 843. The district court erred by failing to so.
Thus, I agree with the majority in affirming Defendant's convictions but would grant the State's writ, find Defendant a fourth felony offender, and remand the matter to the district court for resentencing.

This assignment of error was raised in counsel's brief and in the pro se brief filed by Defendant.

State v. Marcantel , 2000-1629 (La. 4/3/02), 815 So.2d 50, 55 (citations omitted).

443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

State v. Mussall, 523 So.2d 1305, 1309 (La.1988).

Id. (citing Jackson, 443 U.S. at 337, 99 S.Ct. 2781 (Stevens, J. concurring) ).

Id. at 1309-10 (citing Jackson , 443 U.S. at 319, 99 S.Ct. 2781 ).

State v. Rosiere , 488 So.2d 965, 968 (La. 1986).

State v. Kelly , 2015-0484, p. 3 (La. 6/29/16), 195 So.3d 449, 451.

Id. , 2015-0484, pp. 3-4, 195 So.3d at 451 (citing State v. Stowe , 635 So.2d 168, 171 (La. 1994) ).

State v. Williams, 2011-1547, p. 4 (La.App. 4 Cir. 9/26/12), 101 So.3d 104, 108.

Initially, the victim reported to the police that he and the defendant planned to purchase marijuana. However, at trial he admitted that they were actually going to purchase methamphetamine.

Cody Bergeron was also charged with simple robbery arising out of the same events at issue here, but is not a part of this appeal.

Just as in the previous assignment of error, this assignment was raised in counsel's brief and in the pro se brief filed by Defendant.

La. C. E. art. 804(A) reads:
Definition of unavailability. Except as otherwise provided by this Code, a declarant is "unavailable as a witness" when the declarant cannot or will not appear in court and testify to the substance of his statement made outside of court. This includes situations in which the declarant:
(1) Is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of his statement;
(2) Persists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so;
(3) Testifies to a lack of memory of the subject matter of his statement;
(4) Is unable to be present or to testify at the hearing because of death or then existing physical or mental illness, infirmity, or other sufficient cause; or
(5) Is absent from the hearing and the proponent of his statement has been unable to procure his attendance by process or other reasonable means. A declarant is not unavailable as a witness if his exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrong-doing of the proponent of his statement for the purpose of preventing the witness from attending or testifying.

La. C. E. Art. 804(B) reads in pertinent part:
B. Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
(1) Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a party with a similar interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination. Testimony given in another proceeding by an expert witness in the form of opinions or inferences, however, is not admissible under this exception.
(2) Statement under belief of impending death. A statement made by a declarant while believing that his death was imminent, concerning the cause or circumstances of what he believed to be his impending death.
(3) Statement against interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.
* * * *
(7)(a) Forfeiture by wrongdoing. A statement offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness.
(b) A party seeking to introduce statements under the forfeiture by wrongdoing hearsay exception shall establish, by a preponderance of the evidence, that the party against whom the statement is offered, engaged or acquiesced in the wrongdoing. La. C. E. art. 804

Smith admitted that she did not contact the police or pursue any charges against Bergeron for the alleged kidnapping.

State v. Tucker , 2013-1631, p. 50 (La. 9/1/15), 181 So.3d 590, 626, cert. denied, Tucker v. Louisiana, --- U.S. ----, 136 S.Ct. 1801, 195 L.Ed.2d 774 (2016) (citations omitted); see also La. C.C.P. art. 851.

La. C.Cr.P. art. 851 ; State v. Prudholm , 446 So.2d 729 (La. 1984).

This assignment of error is raised in Defendant's pro se brief.

State v. Kyles, 513 So.2d 265, 275-76 (La.1987) (internal citations omitted).

This assignment of error is raised in Defendant's pro se brief.

State v. Laneheart, 12-1580, p. 9 (La. App. 4 Cir. 2/26/14), 135 So.3d 1221, 1229 (citing State v. Howard , 98-0064, p. 15 (La. 4/23/99), 751 So.2d 783, 802 ).

State v. McGee , 98-1508, p. 4 (La. App. 4 Cir. 3/15/00), 758 So.2d 338, 341 (citing State v. Seiss , 428 So.2d 444 (La. 1983) ).

395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)

State v. Granier , 2015-0608 (La. App. 4 Cir. 10/28/15), 178 So.3d 1106, 1108 (citing State v. Juniors, 2003-2425 (La. 6/29/05), 915 So.2d 291 ).

621 So.2d 769, 779-80 (La. 1993).

Id. at 777.

The validity of a guilty plea turns on whether Defendant was informed of three fundamental constitutional rights: 1) his privilege against compulsory self-incrimination, 2) his right to trial by jury, and 3) his right to confront his accusers. Further, the record must show that after being informed of these rights, the Defendant knowingly and voluntarily waived them. State v. Granier , 15-0608 (La. App. 4 Cir. 10/28/15), 178 So.3d 1106, 1108.