STATE OF LOUISIANA     *     NO. 2019-KA-0144

VERSUS     *

    COURT OF APPEAL

ALFRED RAVY     *

    FOURTH CIRCUIT

    *

    STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 533-218, SECTION "D"
Honorable Paul A Bonin, Judge
* * * * * *
**Judge Terri F. Love**
* * * * * *
(Court composed of Judge Terri F. Love, Judge Regina Bartholomew-Woods, Judge Paula A. Brown)

**BARTHOLOMEW-WOODS, J., CONCURS IN THE RESULT**

Leon Cannizzaro
District Attorney
Scott G. Vincent
Assistant District Attorney
ORLEANS PARISH
619 S. White Street
New Orleans, LA 70119

     COUNSEL FOR APPELLEE, STATE OF LOUISIANA

Sherry Watters
LOUISIANA APPELLATE PROJECT
P. O. Box 58769-8769
New Orleans, LA 70158

     COUNSEL FOR DEFENDANT/APPELLANT, ALFRED RAVY

**AFFIRMED**
**September 11, 2019**

This appeal arises from the conviction of defendant for sexual battery and indecent behavior with a juvenile under the age of thirteen. Defendant was sentenced to thirty-five years at hard labor, with the first twenty-five years without benefit of probation, parole or suspension of sentence for sexual battery, and to ten years, with the first two years without benefit of probation, parole or suspension of sentence for indecent behavior, sentences to be served concurrently.

Defendant appealed contending that 1) the evidence was insufficient to support his convictions, 2) the trial court erred by denying his challenge for cause, 3) non-unanimous verdicts do not support felony convictions, and 4) his sentence was unconstitutionally excessive.

We find that the evidence adduced at trial was sufficient for a rational trier of fact to find defendant guilty as charged; the trial court did not err by denying defendant's challenge for cause, as the prospective juror stated she would not find an innocent person guilty; that non-unanimous verdicts for crimes committed by the defendant are constitutional; and, considering the facts and circumstances of this case, defendant's sentences are not unconstitutionally excessive.

### *FACTUAL AND PROCEDURAL BACKGROUND*

Alfred Ravy was visiting with the victim's uncle ("Uncle") when he asked to use the restroom. While Mr. Ravy was walking to the restroom, he allegedly

entered the eight-year-old victim's bedroom, moved her from where she was sitting, placed her face down on the floor of her bedroom, and began "humping" her from behind.

As a result, Mr. Ravy was charged with sexual battery (count 1), and indecent behavior with a juvenile under the age of thirteen (count 2), violations of La. R.S. 14:43.1, and La. R.S. 14:81, respectively. Mr. Ravy pled not guilty to the charges.

Following a jury trial, Mr. Ravy was found guilty on both counts. The trial court denied Mr. Ravy's motions for post-verdict judgment of acquittal and for new trial. Mr. Ravy was then sentenced to thirty-five years at hard labor, with the first twenty-five years without benefit of probation, parole or suspension of sentence on count 1, and to ten years, with the first two years without benefit of probation, parole or suspension of sentence on count 2, sentences to be served concurrently. Mr. Ravy's appeal followed.

### TESTIMONY AND EVIDENCE

#### Sergeant Merrell Merricks

Sergeant Merrell Merricks, the custodian of the New Orleans Police Department ("NOPD") 911 Division records identified the audio of the 911 call and incident recall associated with this matter.

#### Detective Bianca DeIrish

Detective Bianca DeIrish[1] of the NOPD Child Abuse Unit testified that she received a call through the Command Desk directing her to Children's Hospital to investigate a complaint of sexual abuse. Detective DeIrish privately spoke to the victim's mother. Detective DeIrish learned that the incident occurred on

---

[1] By the time of trial, the detective utilized her married name: Boone.

December 7, 2016, while the victim[2] was at her grandmother's ("Grandmother") residence. Grandmother was running an errand at the time, but returned shortly afterwards, at which time the victim informed Grandmother that Mr. Ravy[3] touched her. Detective DeIrish also learned that Uncle was at the residence at the time of the incident. Detective DeIrish spoke with Grandmother by telephone about three or four days after the investigation began. However, Uncle never responded to Detective DeIrish's request for information.

Detective DeIrish observed the victim's interview at the Child Advocacy Center by closed circuit video in an adjacent room. She recalled the victim reported having been sexually abused by "Scrappy," a nickname for Mr. Ravy. After speaking with Grandmother, Detective DeIrish scheduled a medical forensic interview of the victim at the Audrey Hepburn CARE Center. Upon receiving the report compiled from that phase of the investigation, along with an Instagram photo of Mr. Ravy supplied by the victim's mother, Detective DeIrish obtained a warrant for Mr. Ravy's arrest on charges of sexual battery and indecent behavior with a juvenile.

*Uncle*

Uncle testified that he, Grandmother (his mother), and the victim lived together briefly in 2016. On December 7, 2016, Mr. Ravy stopped at the residence to charge his cell phone. Grandmother was not home and the victim was in her bedroom watching television. Mr. Ravy spoke with Uncle for a short time, after which Mr. Ravy went to the bathroom. In the meantime, Grandmother returned home. Uncle noticed that Mr. Ravy was no longer in the bathroom, so he walked

---

[2] The victim's date of birth is February 12, 2008.
[3] Mr. Ravy's date of birth is October 4, 1990.

to the victim's bedroom, where he found Mr. Ravy speaking to the victim. Uncle did not think anything was amiss until he noticed the victim's face as he and Mr. Ravy walked out of the bedroom to go to the store. When Uncle returned home, the victim told him that Mr. Ravy had touched her. Uncle then confronted Mr. Ravy, whereupon a physical altercation occurred. Grandmother telephoned the victim's mother, but received no answer. The incident was not reported to the police that night.[4]

During cross-examination, Uncle stated that until about one month prior to the incident, Mr. Ravy lived at Grandmother's residence. However, Mr. Ravy moved out when he was told the victim would be staying at the residence.

### Grandmother

Grandmother testified that in December 2016, she and her two sons, along with the victim, lived together in an apartment. Mr. Ravy, who was her son's friend, lived at her residence for about one month prior to the victim's arrival in December 2016. Grandmother stated she did not want any men who were not close family members residing at the house while the victim was living there. On December 7, 2016, she left the residence to run an errand, leaving the victim and Uncle at the house. While she was gone, Mr. Ravy arrived at the residence and asked to charge his cell phone. Mr. Ravy and Uncle sat and spoke for a while. When Grandmother returned home, Mr. Ravy and Uncle left to go to the store. At that time, the victim told Grandmother that Mr. Ravy touched her. When Uncle and Mr. Ravy returned from the store, Grandmother asked Uncle to speak to the victim, who repeated to Uncle what she had told Grandmother. After that, Uncle and Mr. Ravy began to fight. Grandmother ordered Mr. Ravy to leave, but she

---

[4] The assault was reported to the police by the victim's mother five days after the incident.

testified that she did not call the police because she was afraid. Grandmother did not speak to the victim's mother until about two days after the incident.

*Samantha Sahl*

Licensed social worker/forensic interviewer Samantha Sahl interviewed the victim alone at the Children's Advocacy Center on December 15, 2016. She stated that the interview was recorded, and that authorized law enforcement and/or Department of Children and Family Service ("DCFS") personnel were permitted to observe the interview from a closed-circuit television and submit questions through an earpiece.

Ms. Sahl testified that as part of protocol, the interviewer establishes a rapport with a victim in a child-friendly setting to obtain the most complete description of the sexual assault. The interviewer employs open ended questions to avoid suggesting answers to the child. The interviewer assures the child that her purpose is to help the child, but that in order to do so, she needs the child's help and truthful answers to learn and understand what happened to the child. At the conclusion of the interview, the interviewer asks if the child is worried about anything they discussed and/or if the child is fearful of returning home.

During the interview, the audio-visual recording of which was played for the jury, the victim told Ms. Sahl that she was living with Grandmother and Uncle at the time of the incident. She explained that while "Scrappy" was at Grandmother's house that day, he told Uncle he needed to use the bathroom. Mr. Ravy walked down the hall, closed the bathroom door, and then entered the victim's bedroom as she was watching television. Mr. Ravy placed the victim on the floor,[5] removed

---

[5] The victim demonstrated that Mr. Ravy placed her on her stomach on the floor. She then stated that he placed her on her back on the floor.

her pants, removed his penis from his pants, held her by her wrists and began "humping" her. The victim told Ms. Sahl that Mr. Ravy removed his penis from his underwear and masturbated[6] in her presence. The victim also saw a white substance coming from Mr. Ravy's penis when he was "humping" her and after he finished masturbating.

### *Victim*

The victim testified[7] and remembered speaking to Ms. Sahl, but she could not remember how she answered Ms. Sahl's questions. The victim recalled initially telling Grandmother that Mr. Ravy had hit her on her buttocks. She told her mother Mr. Ravy pulled her pants down and "humped" her. After the victim told her mother what Mr. Ravy had done, the victim's mother brought her to the hospital. A few days later, the victim spoke to Ms. Ann Troy, but she said she could not remember what she told Ms. Troy.

### *Dr. Anne Troy*

The State offered Ms. Ann Troy, a forensic nurse practitioner at Children's Hospital, as an expert in child sexual abuse. Ms. Troy interviewed the victim at the Audrey Hepburn CARE Center on December 28, 2016. She authenticated the report she prepared in conjunction with the examination. She also authenticated the audio tape of the incident history related by the victim. The audio of the incident report was played for the jury wherein the victim reported to Ms. Troy that Mr. Ravy placed her on the floor on her stomach, removed her pants, and began "humping" her from behind. The victim also said Mr. Ravy's penis was dry after the incident. Ms. Troy testified that the victim gave her a clear and detailed history

---

[6] The victim did not use the term "masterbate." Instead she stated that Mr. Ravy was "pumping" his private part.

[7] The victim was ten years old at the time of trial.

6

of sexual abuse.

***ERRORS PATENT***

A review for errors patent on the face of the record reveals none.

***SUFFICIENCY OF THE EVIDENCE***

Mr. Ravy contends the evidence was insufficient to support his convictions because the victim's testimony was inconsistent and unreliable, and the State failed to produce medical or forensic evidence to support the charges.

The well-settled jurisprudence dictates that "[w]hen issues are raised on appeal as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence." *State v. Parker*, 16-1166, 17-0141, 18-0432, p. 3 (La. App. 4 Cir. 12/12/18), 259 So. 3d 1112, 1115-16, quoting *State v. Marcantel*, 00-1629, p. 8 (La. 4/3/02), 815 So. 2d 50, 55. "In reviewing whether the evidence presented in a case is sufficient to support a conviction," the appellate court is "governed by the standard set forth in the United States Supreme Court decision of *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)." *State v. Miner*, 14-0939, p. 5 (La. App. 4 Cir. 3/11/15), 163 So.3d 132, 135. "The standard is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found all of the essential elements of the offense proven beyond a reasonable doubt." *Parker*, 16-1166, 17-0141, 18-0432, p. 3, 259 So. 3d at 1116. Moreover, "[t]he *Jackson* doctrine involves more than simply applying a fixed standard to measure the simple quantum of the evidence produced in a case." *Id.* (quoting *State v. Mussall*, 523 So. 2d 1305, 1309 (La. 1988)). "A sufficiency of evidence review does not require a court to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'"

7

*Id.* "'The inquiry requires the reviewing court to ask whether the trier of fact interpreting all of the evidence in this manner could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.*

The "reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." *State v. Toups*, 01-1875, p. 3 (La. 10/15/02), 833 So. 2d 910, 912. "A reviewing court is neither permitted to second guess the rational credibility determinations of the fact finder at trial, nor is it to consider the rationality of the thought processes employed by a particular fact finder in reaching a verdict." *Parker*, 16-1166, 17-0141, 18-0432, p. 4, 259 So. 3d at 1116. "It is not the function of an appellate court to assess credibility or reweigh the evidence." *State v. Swanzy*, 10-0878, pp. 10-11 (La. App. 4 Cir. 2/16/11), 61 So. 3d 114, 120.

Additionally, with sexual offenses, "the victim's testimony alone can be sufficient to establish the elements of a sexual offense, even if the State does not introduce medical, scientific, or physical evidence to prove the commission of the offense." *State v. Hollins*, 11-1435, p. 18 (La. App. 4 Cir. 8/29/13), 123 So. 3d 840, 855.

For this Court to uphold Mr. Ravy's conviction for sexual battery, the record must establish that the State proved beyond a reasonable doubt all the essential elements of the offense. La. R.S. 14:43.1 defines sexual battery, in pertinent part, as the intentional engaging in any of the following acts with another person, where "[t]he offender acts without the consent of the victim", or where "[t]he victim has not yet attained fifteen years of age and is at least three years younger than the offender": (1) the touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender; or (2) the

8

touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim.

Regarding indecent behavior with juveniles, La. R.S. 14:81 provides in pertinent part:

> A. Indecent behavior with juveniles is the commission of any of the following acts with the intention of arousing or gratifying the sexual desires of either person:
>
> > 1. Any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons. Lack of knowledge of the child's age shall not be a defense[.]

"[I]ndecent behavior with juveniles is a specific intent crime where the [S]tate must prove the defendant's intent to arouse or gratify his sexual desires by his actions with a child. *State v. Wallace*, 41,720, p. 5 (La. App. 2 Cir. 1/24/07), 949 So. 2d 556, 559. "Specific criminal intent is 'that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.'" *State v. Bremer*, 97-0456, p. 4 (La. App. 4 Cir. 12/10/97), 704 So. 2d 917, 920 (quoting La. R.S. 14:10(1)).

"The word 'lewd' means lustful, indecent, lascivious, and signifies that form of immorality which relates to sexual impurity carried on in a wanton manner." *State v. Holstead*, 354 So. 2d 493, 497 (La. 1977). It "is identified with obscenity and measured by community norms for morality." *State v. Robinson*, 43,063, p. 6 (La. App. 2 Cir. 2/13/08), 975 So. 2d 853, 857. "The word 'lascivious' means tending to excite lust, lewd, indecent, obscene, relating to sexual impurity, [and] tending to deprave the morals in respect to sexual relations." *Holstead*, 354 So. 2d at 497. Additionally, the definition of a lewd and lascivious act "encompasses not

only the physical touching of the victim in an indecent manner, but also 'indecent sexual displays in the presence of children under the age of seventeen.'" *State v. Interiano*, 03-1760, p. 7 (La. 2/13/04), 868 So. 2d 9, 15 (quoting La. R.S. 14:81(A)).

The victim testified that Mr. Ravy sexually battered her and committed indecent behavior. In December 2016, when the crimes were committed, Mr. Ravy was twenty-six years old. The victim was eight years old. The victim's testimony demonstrated that Mr. Ravy entered her bedroom, placed her on the floor, removed his and her outer pants, and rubbed his erect penis against her body in order to arouse his sexual desire. He then exposed his penis and masturbated in front of the victim. Based on this testimony, a juror could rationally find his behavior was lewd or lascivious and that, by his actions, Mr. Ravy exhibited the specific intent to arouse or gratify his sexual desires with a child. *See State v. Robinson,* 43,063 (La. App. 2 Cir. 2/13/08), 975 So. 2d 853 (act of grabbing the fourteen-year-old victim by the buttock deemed indecent behavior with juvenile); *State v. Patterson,* 09-0199 (La. App. 3 Cir. 11/4/09), 21 So. 3d 1119 (the defendant's attempting to have juvenile perform oral sex was indecent behavior); *State v. Woodward*, unpub., 14-598 (La. App. 3 Cir. 11/5/14), 2014 WL 5771454 (defendant pled guilty to indecent behavior with a juvenile for touching victim's vagina and touching her face or arm with his penis). Accordingly, Mr. Ravy's assertion lacks merit.

### CHALLENGE FOR CAUSE

Mr. Ravy asserts that the trial court erred by denying his challenge for cause regarding prospective juror 31.

"Louisiana Constitution article I, § 17 guarantees defendants the right to a

full voir dire examination of prospective jurors and challenge jurors peremptorily." *State v. Juniors*, 03-2425, p. 7 (La. 6/29/05), 915 So. 2d 291, 304. In trials of offenses punishable by imprisonment at hard labor, as in the present case, a defendant has twelve peremptory challenges, as does the State. La. C.Cr.P. art. 799. "When a defendant uses all twelve of his peremptory challenges," a trial court's erroneous ruling on a defendant's challenge for cause that results in the deprivation of one of his "peremptory challenges constitutes a substantial violation of his constitutional and statutory rights, requiring reversal of his conviction and sentence." *Juniors,* 03-2425, pp. 7-8, 915 So. 2d at 304. Therefore, to establish reversible error in the denial of one of his challenges for cause, a defendant needs to show that: (1) he exhausted all of his peremptory challenges; and (2) the trial court erred in refusing to grant his challenge for cause. *Id.,* 03-2425, p. 8, 915 So. 2d at 305.

Mr. Ravy exhausted his peremptory challenges, and challenged prospective juror 31, contending that she could not be impartial, given her reported history of having been a victim of sexual violence. Therefore, we must discern whether the trial court erred in denying Mr. Ravy's challenge for cause of prospective juror 31.

La. C.Cr.P. art. 797 defines challenges for cause and provides the bases for said challenges, in pertinent part, as follows:

> (2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
> *        *        *
> (4) The juror will not accept the law as given to him by the court; or

"A prospective juror's responses during voir dire cannot be considered in isolation, and a challenge for cause should be granted even when a prospective juror declares

his or her ability to remain impartial." *State v. Wells*, 14-0612, p. 122 (La. App. 4 Cir. 9/14/16), 203 So. 3d 233, 302. "This is true if the juror's responses *as a whole* reveal facts from which bias, prejudice, or an inability to render a judgment according to law may be reasonably inferred." *Id.* (emphasis in original).

The Louisiana Supreme Court recognized that "the line-drawing required of district courts faced with challenges for cause of prospective jurors who give equivocal or contradictory responses during *voir dire* is complicated and oftentimes daunting." *State v. Mickelson*, 12-2539, p. 12 (La. 9/3/14), 149 So. 3d 178, 186 (emphasis in original). Thus, the Court "reiterated the well-settled principle that an appellate court should accord great deference to the district court's ruling on a challenge for cause, which is necessarily based, in part, on the court's personal observations during questioning." *Id.*, 12-2539, p. 12, 149 So. 3d at 186-87. Therefore, "a district court is vested with broad discretion in ruling on challenges for cause, and its rulings will be reversed only when a review of the *voir dire* record as a whole reveals an abuse of discretion." *Id.*, 12-2539, pp. 12-13, 149 So. 3d at 187 (emphasis in original).

The fact that a juror was previously the victim of crime will not disqualify that juror from serving so long as the juror remains impartial. *State v. Lewis*, 18-0662, p. 5 (La. App. 4 Cir. 12/19/18), 262 So. 3d 302, 305, citing *State v. Robinson,* 36,147, pp. 9-10 (La. App. 2 Cir. 12/11/02), 833 So. 2d 1207, 1213-14 (no abuse of discretion when denying cause challenge of prospective juror who was a childhood rape victim, and who had a relative who was a victim of rape and murder, in case of a defendant charged with forcible rape; juror stated past experiences would not affect her ability to act impartially).

During voir dire, prospective juror 31 revealed she was a victim of sexual

violence.  When questioned whether she could be fair, she responded, "Yes.  I believe I would be able to be fair."  Voir dire continued as follows:

**Prospective juror:**
I wold [sic] just like to say I haven't administered any kind of therapy for victims of violence, but I have sought those services myself as a victim of sexual violence.

**Defense counsel:**
And was that recently?

**Prospective juror:**
. . . approximately ten years ago.

**Defense counsel:**
How do you think that's going to – how do you think that will affect your sitting on a case of that nature?

**Prospective juror:**
I would like to think that it would not skew my opinion of the facts, but, honestly, not knowing what the testimony will be, what the victim's experiences allegedly were, whether or not I'm going to be triggered in any way, or whether I'm inherently going to have my empathy skewed towards the alleged victim because I've experienced violence myself.

*        *        *

**Defense counsel:**
And so it would affect your ability to potentially to fairly judge the case?

**Prospective juror:**
I would do my best to fairly judge, if given the opportunity, if requested by the Court, but I wanted to be transparent as this was my experience and it has been the experience of people close to me, too.

*        *        *

**The Court:**
You had mentioned that you yourself had been a victim of violence. You weren't more specific than that, but you were concerned about possibly being triggered and the emotion being triggered during trial, is what I kind of remembered.

**Prospective juror:**
Yes.  I'm a victim of sexual violence and I have friends who are also victims of sexual violence.

**The Court:**
And you seem to be composed right now, but you were sort of alerting us -- I don't want to put words into your mouth at all, but that you

13

seemed to be –

**Prospective juror:**
No.  That absolutely was my intent.

**The Court:**
Right.

**Prospective juror:**
Was that I wanted the counsel to be aware so that they can make a fair and unbiased judgment because I'm supposed to be fair and unbiased.

And so I don't know necessarily that I can make that call that I am fair and unbiased, given that this has happened to me.  That's way I wanted to bring it to your attention.

**The Court:**
I'm going to let the lawyers ask any questions that they have. . .

**Prosecutor:**
. . . Do you think that, after listening to the testimony, that you would – if you feel the State had not met its burden, based on the evidence you heard, do you think your emotional reaction to the testimony from the witnesses and from the victim in this case might lead you to vote guilty even if you felt the evidence didn't meet that burden?

**Prospective juror:**
No.  I couldn't do that to someone.  If they're not guilty, they're not guilty and they don't deserve to serve time for a crime they didn't commit.

\*          \*          \*

**Defense counsel:**
Just one question, ma'am.  Your prior experiences, is that going to affect your ability to be fair and impartial to Mr. Ravy?

**Prospective juror:**
I would do my best to be fair and impartial if I was selected for the jury.

**Prosecutor:**
Do you think it may affect you?

**Prospective juror:**
I can't say without a doubt that it won't.  Sexual assault is something that affects people to their core.  And that, paired with other instances of violence that I've been a victim of, it can make you not trust police, not trust the judicial system, not – as much as you think it would sway you completely to just saying, "guilty," "guilty," for everybody, it makes you really apprehensive to participate because you know that

> everything isn't black and white, cut and dry. Things aren't as simple
> as people would like them to believe generally.
>
> And I would hope that I will be able to give someone their fair
> day in court because I would pray for the same.

Prospective juror 31 understood the importance of a fair trial by fair and impartial jurors. She conveyed her belief that only guilty parties should be punished by the criminal justice system and said that she would do her best to be impartial. Prospective juror 31 indicated that her history of sexual assault would not cause her to automatically find someone guilty if the evidence presented did not support a conviction. Additionally, prospective juror 31 did not indicate she could not follow the law or lay aside her personal experience. Further, the trial judge noted the juror's attention and calm composure during voir dire. *Cf. State v. Dorsey,* 10-0216, pp. 23-24 (La. 9/7/11), 74 So. 3d 603, 622, ("a prospective juror's seemingly prejudicial response is not grounds for an automatic challenge for cause, and a district judge's refusal to excuse him on the grounds of impartiality is not an abuse of discretion, if after further questioning the potential juror demonstrates a willingness and ability to decide the case impartially according to the law and evidence.")

Moreover, "[t]he law does not require that a jury be composed of individuals who are totally unacquainted with the defendant, the person injured by the offense, the district attorney, or defense counsel. It requires that jurors be fair and unbiased." *Juniors*, 03-2425, p. 11, 915 So. 2d at 306. As such,

> the prospective juror's past experience as, or relationship to, a victim of a crime similar to that for which the defendant is being tried must be examined in conjunction with other evidence in the record of the *voir dire* proceeding that bears on the prospective juror's ability to be fair and impartial and to apply the law as instructed by the trial court.

*State v. Dotson*, 16-0473, p. 11 (La. 10/18/17), 234 So. 3d 34, 42.

The trial court judge has the advantage of observing the characteristics and demeanor of the attorneys and prospective jurors. Therefore, the trial court is best suited to determine a juror's candor. Given the deference afforded the trial court when ruling on such challenges, Mr. Ravy has not shown that the trial court erred by finding that prospective juror 31 could adjudicate guilt according to the law and evidence, notwithstanding that she had been a victim of sexual violence.

### NON-UNANIMOUS JURY VERDICT

Mr. Ravy also challenges the constitutionality of the non-unanimous jury verdicts.[8] Mr. Ravy contends that the non-unanimous verdicts violate the Equal Protection Clause because the provision's enactment was motivated by an express and overt desire to discriminate against people on account of race.

The Louisiana Supreme Court addressed the issue in *State v. Bertrand*, 08-2215 (La. 3/17/09), 6 So. 3d 738. The Court noted "defendants argue that the use of non-unanimous verdicts [has] an insidious racial component, allow[s] minority viewpoints to be ignored, and is likely to chill participation by the precise groups whose exclusion the Constitution has proscribed." *Id.*, 08-2215, p. 6, 6 So. 3d at 742. The *Bertrand* Court found that a non-unanimous twelve-person jury verdict was constitutional and that La. C.Cr.P. art. 782[9] did not violate the Fifth, Sixth, and Fourteenth Amendments. *Id.*, 08-2215, p. 8, 6 So. 3d at 743. Therefore, Mr. Ravy's assertion lacks merit.[10]

---

[8] Mr. Ravy was convicted by an 11-1 guilty vote on each count of the indictment.

[9] In 2018, La. C.Cr.P. art. 782 was amended to require a unanimous verdict in cases for an offense in which the punishment is necessarily confinement at hard labor. However, the provision specifically states the amendment is applicable to felonies committed on or after January 1, 2019. *See* Acts. 2018, No. 493, § 1, La. C.Cr.P. art. 782.

[10] This Court notes that the United States Supreme Court granted certiorari in *State v. Ramos*, 16-1199 (La. App. 4 Cir. 11/2/17), 231 So. 3d 44, *writ denied*, 17-2133 (La. 6/15/18), 257 So. 3d 679, and *writ denied sub nom, State ex rel. Evalgelisto Ramos v. State*, 17-1177 (La. 10/15/18),

*EXCESSIVE SENTENCE*

Mr. Ravy avers that the trial court erred by imposing an excessive sentence. He asserts that his age (twenty-six at the time of the offense); his lack of criminal history; the lack of injury, weapons or force in the commission of the offenses; and the fact that he has two children to care for, are all factors supporting a lenient sentence.

"The trial judge is afforded wide discretion in determining sentences, and the court of appeal will not set aside a sentence for excessiveness if the record supports the sentence imposed." *State v. Williams*, 15-0866, pp. 12-13 (La. App. 4 Cir. 1/20/16), 186 So. 3d 242, 250.

"Both the Eighth Amendment of the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of cruel and unusual punishment." *State v. Wilson*, 14-1267, p. 23 (La. App. 4 Cir. 4/29/15), 165 So. 3d 1150, 1165. A sentence is excessive, even when it is within the applicable statutory range, if it is "'grossly disproportionate to the severity of the offense or constitutes nothing more than needless infliction of pain and suffering.'" *Id.*, 14-1267, p. 25, 165 So. 3d at 1166 (quoting *State v. Hackett*, 13-0178, p. 14 (La. App. 4 Cir. 8/21/13), 122 So. 3d 1164, 1174). "In reviewing a sentence for excessiveness, the appellate court must consider the punishment and the crime in light of the harm to society and gauge whether the penalty is so disproportionate as to shock the court's sense of justice." *State v. Bradley*, 18-0734, p. 8 (La. App. 4 Cir. 5/15/19), 272 So. 3d 94, 100. "The excessiveness of a sentence is a question of law, and a reviewing court will

---

253 So. 3d 1300, presumably to consider whether the Fourteenth Amendment fully incorporates the Sixth Amendment guarantee of a unanimous verdict.

not set aside a sentence absent a manifest abuse of discretion by the trial court." *State v. Alridge*, 17-0231, p. 39 (La. App. 4 Cir. 5/23/18), 249 So. 3d 260, 288, *writ denied*, 18-1046 (La. 1/8/19), 259 So. 3d 1021.

Mr. Ravy was convicted of one count of sexual battery for which he faced a sentence at hard labor of not less than twenty-five years nor more than ninety-nine years, at least twenty-five years of which must be served without benefit of parole, probation or suspension of sentence (La. R.S. 14:43.1(C)). Mr. Ravy was sentenced to thirty-five years, with the first twenty-five years without benefit of probation, parole or suspension of sentence.

Mr. Ravy was also convicted of one count of indecent behavior with a juvenile under the age of thirteen where the offender is seventeen years of age or older. Accordingly, he was subject to a sentence at hard labor of not less than two nor more than twenty-five years, at least two years of which must be served without benefit of parole, probation or suspension of sentence (La. R.S. 14:81(H)(2)). He was sentenced to ten years, the first two years without benefit of probation, parole or suspension of sentence. The trial court ordered the sentences to be served concurrently.

During the sentencing, the trial court stated:

> . . . sex offenders, in terms of their recidivism, are in a whole different category from any other offender. And I don't believe . . . that sex offenders age out [of the commission of sex offenses] . . . I think that's established. They don't age out. You can have 70-year-old men that are still out there doing these types of things. So that argument in sex offenders is different.
>                    *           *           *
> . . . I just see a sex offender in a completely different category than a man who . . . acted – killing another person, whatever other things they may do, armed robbery, whatever. I do think they age out. But I don't believe that sex offenders age out of sex offenses.
>                    *           *           *
> . . . we know from our experience that the victims of child abuse - -

which he is a perpetrator of child abuse, the jury found that – that these people carry a burden through the rest of their lives. And many of them end up becom[ing] dope addicts themselves. Many of them come into the court with criminal problems. It started with them being abused as children. . . they cannot deal with it. This is something – when you do this to a child, you have done something horrifying to them. It's not an incident that takes place in a bedroom one time. It stays with them their whole life. . . as the [victim's] mother testified, it already has terrible effects on this young [victim]. And our law says he has to be punished for this.

                    *               *               *

I hope that - - I hope that you will take advantage of any program for sex offenders that the Department of Corrections offers to you. And that if you do take advantage of those programs and take advantage of the guidance like men like Mr. Jones can give you while you're incarcerated, that at your first opportunity for parole if they find that you are suitable to be returned to the public that they would.

I am reluctant - - I am reluctant to just give you the minimum sentence because I want to make sure that you do proceed to engage in the rehabilitative efforts that Mr. Jones has talked about. I really - - so, what I'm saying is I hope you don't end up doing 35 years. I don't want you to do 35 years. But I don't see any reason to deviate below the 25.

Although the trial judge in this case did not articulate further specific reasons for the sentence, in reviewing a claim that a sentence is excessive, an appellate court generally "must determine whether the trial judge has adequately complied with statutory guidelines in La. C.Cr.P. art. 894.1," and whether the sentence is warranted under the facts established by the record. *State v. Boudreaux,* 11-1345, p. 5 (La. App. 4 Cir. 7/25/12), 98 So. 3d 881, 885. "The articulation of the factual basis for a sentence is the goal of Article 894.1, not rigid or mechanical compliance with its provisions." *State v. Gibson*, 15-1390, p. 10 (La. App. 4 Cir. 7/6/15), 197 So. 3d 692, 699. "Where the record clearly shows an adequate factual basis for the sentence imposed, resentencing is unnecessary even when there has not been full compliance with Article 894.1." *Id.* Therefore, "[t]he reviewing court shall not set aside a sentence for excessiveness if the record supports the sentence imposed." *Id.* See La. C.Cr.P. art. 881.4(D).

Mr. Ravy's sentences comport with jurisprudence from this and other circuits. *See State v. Lilly*, 12-0008 (La. App. 1 Cir. 9/21/12), 111 So. 3d 45 (wherein the First Circuit affirmed a thirty-five year sentence for a fifty-seven-year old first-time felony offender convicted of sexual battery involving a single instance of abuse when he touched the victim's vagina while he and his wife were babysitting his wife's grandchildren); *State v. Scoggins,* 10-0869 (La. App. 4 Cir. 6/17/11), 70 So. 3d 145 (the defendant was convicted on one count of indecent behavior perpetrated on his eight-year-old niece. The trial court sentenced him to fifteen years at hard labor, without benefit of parole, probation, or suspension of sentence for the first ten years, and it placed him on active probation for the remaining five years. This Court found that the sentence was not unconstitutionally excessive); *State v. Mansell,* 43,899 (La. App. 2 Cir. 2/25/09), 4 So. 3d 277 (the appellate court found that a twelve-year sentence for indecent behavior with a juvenile under the age of thirteen, with the first two years served without the benefit of parole, probation, or suspension of sentence, was not unconstitutionally excessive).

Considering the present case, Mr. Ravy's sentence is not unconstitutionally excessive. The jury found Mr. Ravy guilty of sexual battery and indecent behavior with a juvenile under the age of thirteen. The victim was eight years old at the time of the offenses. The sentences Mr. Ravy received were less than the maximum permitted. Given the testimony and evidence adduced at trial, we find Mr. Ravy's assertion regarding the alleged unconstitutionality of his sentence is meritless.

### *DECREE*

For the above-mentioned reasons, we find that 1) sufficient evidence was

presented for a rational trier of fact to find Mr. Ravy guilty as charged, 2) the trial court did not err by denying Mr. Ravy's challenge for cause regarding prospective juror 31, 3) the non-unanimous jury verdict was constitutional, and 4) Mr. Ravy's sentence was not unconstitutionally excessive. Accordingly, Mr. Ravy's conviction and sentence are affirmed.

**AFFIRMED**