775 So.2d 613 (2000)
STATE of Louisiana
v.
Earl WEAVER.
No. 99-KA-2177.
Court of Appeal of Louisiana, Fourth Circuit.
December 6, 2000.
*615 Harry F. Connick, District Attorney, Juliet Clark, Assistant District Attorney, New Orleans, LA, Counsel for State of Louisiana.
William R. Campbell, Jr., Louisiana Appellate Project, New Orleans, LA, Counsel for Defendant/Appellant.
Court composed of Chief Judge ROBERT J. KLEES, Judge JOAN BERNARD ARMSTRONG, and Judge CHARLES R. JONES.
JONES, Judge.
Earl Weaver appeals his conviction for distribution of cocaine and his sentence of life imprisonment as a triple felony offender. On appeal, both Weaver pro se and appellate counsel assign errors for review. We affirm.

FACTS
Officer Adam Henry of the New Orleans Police Department testified that on January 20, 1998, he was working as an undercover agent in a buy/bust drug operation. His job assignment was to make himself available to people who sell drugs. He worked citywide, and on January 20, 1998, he was dressed in plainclothes and was driving a vehicle equipped with audio and video recording devices. Prior to encountering Weaver, Officer Henry was cruising in the uptown area of the city. As the officer neared the area of Terpsichore and Harmony Streets, Weaver signaled to him. More specifically, Weaver initially shouted at Officer Henry. The officer then turned around and shouted back and whistled at Weaver.
Officer Henry drove his vehicle over to where Weaver was standing and asked what was going on. Weaver asked the officer what he wanted. Officer Henry responded that he was looking for some dimes or whatever he could get. Officer Henry explained that dime is the street term for a ten dollar piece of crack cocaine. Weaver stated that he had some twenties, i.e., twenty-dollar pieces of crack cocaine, and he retrieved two pieces of cocaine from a film canister and gave it to the officer. Officer Henry gave Weaver a twenty-dollar bill, which he had previously photocopied in anticipation of making a buy. After leaving the scene, Officer Henry relayed a description of Weaver to the monitoring agents, who then dispatched the description to the take-down units in the area. Officer Henry noted that Weaver was wearing black pants, a polo sport sweatshirt, and a red scarf skull hat. Members of the take-down team arrested Weaver. Two or three minutes later, Officer Henry circled back to the scene and verified that Weaver was the person who sold him the crack cocaine. Officer Henry identified black sweatpants, a skull cap and a polo sport sweatshirt that was introduced into evidence as the clothes being worn by Weaver the day he was arrested. Officer Henry also testified that a video played for the jury accurately depicted the events that occurred that day.
Officer Joe Belisle testified that when apprehended Weaver had two twenties in his pocket and one twenty in his hand. Officer Belisle arrested Weaver and took the twenty-dollar bill out of his hand.
Teresia Lamb, a criminalist employed by the New Orleans Police Department, testified that the seized rocks tested positive for cocaine as did a white powder found on the inside of the canister. The jury returned a verdict of guilty as charged.
A review of the record reveals no errors patent.

ASSIGNMENT OF ERROR NUMBER 1
In this first assignment of error Weaver argues that the trial court erred in denying his motion for a new trial because his conviction was the result of entrapment.
The defense of entrapment was discussed at length by our Supreme Court in State v. Brand, 520 So.2d 114 (La.1988), as follows:

*616 Entrapment is a defense which arises when a law enforcement official or an undercover agent acting in cooperation with such an official, for the purpose of obtaining evidence of a crime, originates the idea of the crime and then induces another person to engage in conduct constituting the crime, when the other person is not otherwise disposed to do so. The defense is designed to deter the police from implanting criminal ideas in innocent minds and thereby promoting crimes which would not otherwise have been committed. Obviously, law enforcement agents should not persuade citizens to commit crimes, and the defense is recognized to prevent shocking police inducement of the perpetration of a crime.
Entrapment is an affirmative defense. Thus, the burden was on defendant to prove entrapment by a preponderance of the evidence. The question whether the government agent implanted the criminal idea in the mind of an innocent person to induce the commission of a crime that would not otherwise be committed is one for the jury.
The entrapment defense will not be recognized when the law enforcement official merely furnishes the accused with an opportunity to commit a crime to which he is predisposed. In entrapment cases, a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal. Thus, the focus in determining an entrapment defense is on the conduct and predisposition of the defendant, as well as the conduct of the government agent. (Citations omitted).
State v. Brand, 520 So.2d at 117.
Contentions of entrapment are reviewed on appeal pursuant to the sufficiency of evidence standard of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Also see, State v. Long, 97-2434 (La.App. 4 Cir. 8/25/99), 744 So.2d 143, writ denied, 99-2780 (La.3/17/00), 756 So.2d 1140 and State v. Hardy, 98-25, p. 9 (La.App. 5 Cir. 5/13/98), 715 So.2d 466, 471.
The entrapment defense is composed of two elements: (1) an inducement by a state agent to commit an offense; and (2) lack of a predisposition to commit the offense on the part of the defendant. State v. Francis, 98-811 (La.App. 5 Cir. 1/26/99), 727 So.2d 1235, 1238, writ denied, 99-0671 (La.6/25/99), 746 So.2d 597. Thus, when reviewing a claim for entrapment a reviewing court must first determine whether the defendant proved by a pre-ponderance of the evidence that he was induced to commit the crime. State v. Long, 97-2434, p. 11, 744 So.2d at 150-151. The question of whether the government agent induced an innocent person to commit a crime that he would not otherwise commit is for the jury to decide. Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932).
Weaver argues that it is obvious that the officers took the lead in inducing him to commit this crime because Officer Henry approached him and asked for a dime. Given this fact, Weaver argues that the State failed to meet its obligation of adducing evidence of his predisposition to commit the crime.
However, Officer Henry testified that Weaver signaled him to stop, thus drawing the officer's attention to him. Further, in response to a simple question of what was going on, Weaver asked the officer what he wanted. When the plainclothes officer indicated that he was looking for some dimes, the street term for a ten dollar piece of cocaine, Weaver quickly responded that he had some twenties. He then pulled out a cannister, removed two pieces of cocaine from the cannister, and handed them to the officer. The officer then gave him a twenty dollar bill. Weaver presented no evidence to suggest that the officer induced him to commit an act that he was not already predisposed to commit.
The testimony given by Officer Henry clearly proved that the officer merely provided *617 Weaver with the opportunity to commit a crime that he was already predisposed to commit. This assignment of error has no merit.

ASSIGNMENT OF ERROR NUMBER 2
In this second assignment of error Weaver argues that his right to a fair trial was violated because one of the jurors did not reveal that she was acquainted with an arresting officer until after the trial commenced.
Following Officer Belisle's testimony, a conference was held outside the presence of the jury. The court stated that during the questioning of Officer Belisle one juror, Ms. Fentress, stated that she thought she might know the officer from possibly going to high school with him. The court indicated that when asked if she had any contact with him since high school, Ms. Fentress stated no. Further, she indicated she could be fair and impartial in the case. The court indicated that both parties were present when the discussion with the juror took place.
During the conference, counsel for Weaver noted that prior to voir dire the State had indicated the names of the officers it intended to call. Included among the names given was that of Officer Belisle. Yet, the juror failed to mention that she might know Officer Belisle. Accordingly, counsel moved to excuse the juror. The court denied the motion.[1]
Our courts have addressed the issue of whether a juror should be excused when it is discovered during the trial that a juror knows or is related to a witness or victim.
In State v. Miller, 95-857 (La.App. 3 Cir. 1/31/96), 670 So.2d 420 defendant argued the trial court erred in refusing to remove a juror who admitted she had recently been told that she was related to the victim. On the third day of trial, the juror approached the trial court about a telephone call she received from her aunt the night before. A hearing was held in the trial judge's chambers with the juror, the attorneys, the trial judge, and the minute clerk being present. The juror stated that her aunt told her that the victim's grandfather and her father were first cousins. She also stated that she never visited with these family members when she was growing up so she did not know any of them. The court noted that the juror did not know of the relation during voir dire, nor did she know the victim personally. The trial court stated in court that the juror indicated that the relation would not affect her verdict and decided not to remove the juror from the jury. On appeal, the appellate court concluded that the trial court did not abuse its discretion in refusing to remove the juror because (1) she did not personally know the victim nor did she know of the relationship prior to the phone call; and (2) she informed the trial court that this would not affect her verdict.
In State v. Holland, 544 So.2d 461 (La. App. 2 Cir.1989), writ denied, 567 So.2d 93 (La.1990) the court was confronted with the problem of deciding whether to excuse a juror who discovered, after the trial had commenced, she might be related to the victim. A juror informed the judge that on the previous evening his daughter had informed him that she received a telephone call from a person who identified himself as a venireman who had been excused. The caller told her that his grandfather was related to the victim and that he [the venireman] believed he was related to the daughter. After informing the judge of the call, the juror testified that he did not know whether he was in fact related to the excused venireman nor was he aware of the degree of kinship between the venireman and the victim. The juror stated that even if he were in some way *618 related to the excused venireman (and thus the victim), it would not affect him or the process of his decision making. He stated that he could be fair and impartial. In upholding the trial court's refusal to excuse the juror, the court delineated the standard to be used in determining if a juror should be excused based on a relationship with a witness or the victim as follows:
A trial judge is granted great discretion in determining whether to seat or reject a juror for cause, and such rulings will not be disturbed without a showing of an abuse of that discretion. State v. Jones, 474 So.2d 919 (La.1985). Disclosure during the trial that a juror knows or is related to a witness or the victim is not sufficient to disqualify a juror unless it is shown that the relationship is sufficient to preclude the juror from arriving at a fair verdict, State v. Peterson, 446 So.2d 815 (La.App. 2d Cir.1984). The connection must be such that one must reasonably conclude that it would influence the juror in arriving at a verdict. State v. Hodgeson, 305 So.2d 421 (La. 1974). (emphasis added)
State v. Holland, 544 So.2d at 465
Significantly in the matter subjudice, Ms. Fentress only stated that she might possibly have known Officer Belisle from high school. If in fact she attended the same high school as the officer, it is apparent that her acquaintance with the officer was very slight, as she apparently did not recognize his name during the voir dire. Additionally, when making the motion to excuse Ms. Fentress, defense counsel noted that the State, "may have massacred" Officer Belisle's name during voir dire. If so, it is quite possible that Ms. Fentress did not recognize the officer's name because of the way the prosecutor pronounced the name. Regardless of the reason for the delayed realization that she might have known the officer from high school, Ms. Fentress indicated to the district judge that she could be fair and impartial. Under these circumstances, it cannot be said that the district court abused its discretion by denying Weaver's motion to excuse this juror. This assignment of error is without merit.

ASSIGNMENTS OF ERROR NUMBERS 3 and 4
In assignment of error number three Weaver argues that his appointed counsel was ineffective because he withdrew Weaver's plea of not guilty and entered a plea of guilty to the multiple bill. This action, according to Weaver, caused him prejudice because the documentation presented by the State was insufficient to prove he was a triple felony offender.
Prior to addressing the issue of whether the documents established the validity of the prior guilty pleas, it should be noted that Weaver is in error when he states that appointed counsel withdrew his plea of not guilty and entered a plea of guilty to the multiple bill.
A minute entry dated January 15, 1999 contains a notation that Weaver pled guilty to the multiple bill and was sentenced as a triple felony offender. Similarly, an entry on the docket master for January 15, 1999 also contains this same notation. However, a review of the transcripts of October 14, 1998 and January 15, 1999 reveals that Weaver did not plead guilty to the multiple bill. Rather, he was adjudicated a triple felony offender following a complete hearing wherein he was represented by his counsel of his choice. Further, upon completion of the State's case on October 14, 1998, the district court left the hearing open for the express purpose of allowing extra time for defense counsel to file written objections to the bill. After the State presented its case at the multiple bill hearing of October 14, 1998, the court gave defense counsel until October 23, 1998 to file a written response to the multiple bill, and set the matter for sentencing on October 28, 1998. On October 28, 1998, defense counsel appeared in open court and filed a motion for extra time to respond to the multiple bill, along with written objections to the multiple bill. At the request of *619 defense counsel, the court then continued the case and reset the matter for sentencing on December 2, 1998. Because defense counsel was unable to appear in court on December 2, 1998, the court continued the case to December 4, 1998. The case was eventually continued to January 15, 1999. Upon reconvening on January 15, 1999, Weaver's counsel was still not present. Accordingly, the district court appointed counsel to represent him for sentencing purposes only. At that time the court stated that the State had failed to prove Weaver was a fourth felony offender.
Weaver did not plead guilty to the multiple bill. Instead, the court issued a ruling adjudicating the defendant a triple felony offender. The argument that counsel was ineffective for entering a plea of guilty to the multiple bill has no merit.
The defendant also argues that the State failed to introduce sufficient evidence to meet its burden of proving that he was a triple felony offender. More specifically, he argues that the documents presented at the multiple bill hearing failed to establish that he was properly advised of his constitutional rights at the time he previously pled guilty to the predicate offenses forming the basis for the multiple bill.
The Louisiana Supreme Court set forth the burdens of proof in habitual offender proceedings in State v. Shelton, 621 So.2d 769, 779-780 (La.1993):
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. [footnote omitted] If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin [v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)] rights. [footnote omitted]
In the multiple bill of information herein, the State alleged that Weaver was a fourth felony offender. In addition to the April 20, 1998 conviction for distribution of crack cocaine, which forms the basis for this appeal, the State alleged that Weaver had three prior convictions. More specifically, the State alleged a 1994 conviction for possession of cocaine, a 1988 conviction for simple burglary, and a 1979 conviction for simple burglary.
In the original brief filed on behalf of Weaver, defense counsel stated that Weaver was not challenging the sufficiency of the documents introduced to prove a knowing plea to the crime of possession of cocaine in 1994. However, in a pro se brief filed on his own behalf, Weaver insists that the district court erred in allowing the state to use his 1994 guilty plea to possession of cocaine as a predicate for the multiple bill. Accordingly, a discussion of the merits of that argument follows.
To prove the validity of the Weaver's February 28, 1994 conviction for possession of crack cocaine on November 12, 1993, the State introduced 1) a bill of information filed on December 21, 1993 in *620 case # 367-323 charging that on November 12, 1993, the defendant unlawfully possessed crack cocaine; 2) an arrest register wherein the defendant was arrested for possession of crack on November 12, 1993; 3) a docket master for case # 367-323 containing identifying information concerning the defendant and an entry dated February 28, 1994 stating that the defendant appeared in court with his counsel and changed his plea from not guilty to guilty as charged; 4) A minute entry dated 2/28/94 for case # 367-323 stating that the defendant appeared with his counsel and changed his plea from not guilty to guilty as charged. The minute entry reflects that the defendant was informed of his constitutional rights and that a guilty plea form was filed into the record. The State also introduced a waiver of constitutional rights plea of guilty form for case # 367-323 dated February 28, 1994. The waiver form adequately informs the defendant of his three Boykin rights, and it is signed by the defendant, defendant's attorney, and the judge.
However, Weaver argues that his 1994 guilty plea was not valid because the court failed to correctly inform him of the mandatory minimum and maximum penalties that could be imposed because of his guilty plea.
Presumably Weaver is attempting to rely upon La.C.Cr.P. art. 556.1, which provides in part that at the taking of a plea, the court must advise a defendant of the "nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law." However, La.C.Cr.P. art. 556.1 did not exist at the time of Weaver's 1994 plea; it was added in 1997. At the time of the prior plea, the court was not obligated to inform him of the mandatory minimum and maximum penalties that could be imposed because of his guilty plea.
Nevertheless, a review of the waiver of constitutional rights plea of guilty form of February 28, 1994 submitted in case # 367-323 reveals that Weaver was in fact informed that he could possibly receive a sentence of "O  5 years and/or a $5000 fine." He initialed the space next to the statement indicating that he understood this information. This argument of error has no merit.
Next, defense counsel argues that the multiple bill erroneously listed a 1988 conviction for simple burglary in case # 286-681 when the documents introduced at the multiple bill hearing of October 14, 1998 for case # 286-681 demonstrate this simple burglary crime occurred in 1982. Further he argues the documents for case # 286-681 were insufficient to prove a knowing waiver of constitutional rights in conjunction with the plea. He notes that the state only introduced a bill of information, a docket master, a minute entry and an arrest register to prove the validity of the plea in case # 286-681. He correctly notes that the minute entry does not reflect that Weaver was advised of any rights at the time that he pled guilty. It appears that this argument has merit. However, it is not clear that the court used the 1988 conviction in finding Weaver to be a triple felony offender. During the multiple bill hearing the court advised the State that it only needed two priors to establish Weaver was a multiple offender. There was a brief discussion concerning a plea that had been set aside in a case because Weaver was not properly advised of his rights. Although the State incorrectly referred to that case as case # 486-681, it appears the State was actually referring to case # 286-681, which was the case listed in the multiple bill.
The court specifically found that the State did not prove Weaver was a fourth felony offender; however, the court did not specify which convictions had been validly proven. Most likely the court found the burden of proof needed to use case # 286-681 was not met. However, assuming that the court found that sufficient proof was submitted to prove the validity of the 1979 simple burglary conviction, *621 Weaver's adjudication as a third felony offender must be upheld.
In support of the 1979 simple burglary conviction the State introduced a bill of information, a constitutional rights plea of guilty form, a docket master, and a minute entry. In the guilty plea form signed by the defendant, his attorney, and the judge on March 22, 1979, the defendant initialed the appropriate spaces acknowledging that he understood he was waiving his right to a judge or jury trial, his right to confront his accusers, his right to compel the appearance of his witnesses, and his right to exercise his privilege against self-incrimination. Notwithstanding this fact, Weaver notes that neither the docket master nor the minute entry reflects that he was advised of any of his constitutional rights. The March 22, 1979 docket master entry contains no reference to the court advising the defendant of his constitutional rights, and it contains no reference to the court interrogating the defendant regarding his understanding of his rights. Likewise, the minute entry dated March 22, 1979 contains no detailed mention of what occurred. It merely states that the court advised each defendants (the defendant Earl Weaver and a co-defendant Wilder V. Payton, Jr.) of his right to trial by Judge or Jury. The only other evidence of advising defendants of their Boykin rights is the following statement, "Each accused submitted a signed plea of guilty form in connection with their pleas and the Court questioned each under oath regarding their pleas of guilty."
Citing State v. Morgan, 604 So.2d 719 (La.App. 4 Cir.1992), writ denied, 610 So.2d 816 (La.1993), Weaver argues that the plea of guilty form, standing alone, without a transcript is insufficient to prove he was advised of his constitutional rights.
Although the colloquy between the district court and Weaver is the preferred evidence proving he knowingly and voluntarily waived his rights by pleading guilty, it is not indispensable when the record contains other evidence of a proper waiver. State v. Nuccio, 454 So.2d 93 (La.1984); State v. Robair, 622 So.2d 829 (La.App. 4 Cir.1993).
Notwithstanding the brevity of the minute entry and docket master, both documents state that the defendant was attended by counsel at the time that his guilty plea was entered. Moreover, the defendant, his counsel, and the judge signed the waiver of rights/guilty plea form. A minute entry showing that the defendant was attended by counsel at the time he pled guilty, along with a properly executed waiver of rights/guilty plea form is sufficient to carry the State's burden under La. R.S. 15:529.1. State v. Wolfe, 99-0389 (La.App. 4 Cir. 4/19/00), 761 So.2d 596. Also see State v. Andora Y. Hudson and John Hill, unpub., pp. 8 and 10 (La. App. 4 Cir. 5/17/00). Similarly, a docket master showing that the defendant was attended by counsel at the time his plea was entered, along with a properly executed waiver of rights/guilty plea form is also sufficient to carry the State's burden under La. R.S. 15:529.1. See, State v. Earl Brown, unpub., pp. 6-7 99-1481 (La.App. 4 Cir. 5/24/00), 761 So.2d 830. Accordingly, the State carried its burden of establishing the validity of the 1979 guilty plea. These assignments of error are without merit.

DECREE
For the reasons stated herein, Earl Weaver's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Counsel for Weaver also challenged another juror, Mr. Rowe, noting that the juror had been seen sleeping, and when given photocopies of the twenty dollar bill, this juror snatched it out of her hand and refused to look at it. However, on appeal Weaver does not challenge the refusal to excuse this juror.