# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 23-189 consolidated with 23-190


**STATE OF LOUISIANA**

**VERSUS**

**JORDAN D. JOHNSON**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CATAHOULA, NOS. 18-4175, 18-4175A
HONORABLE KATHY A. JOHNSON, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**WILBUR L. STILES**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Candyce G. Perret, Jonathan W. Perry, and Wilbur L. Stiles, Judges.


**AFFIRMED.**

**Holli Ann Herrle-Castillo**
**Louisiana Appellate Project**
**P.O. Box 2333**
**Marrero, LA 70073**
**(504) 345-2801**
**COUNSEL FOR DEFENDANT/APPELLANT:**
      **Jordan D. Johnson**

**Bradley R. Burget**
**District Attorney**
**Karla Shirley-McHand**
**Assistant District Attorney**
**Seventh Judicial District**
**301 Bushley S., 3rd floor**
**Harrisonburg, LA 71340**
**(318) 744-5232**
**COUNSEL FOR APPELLEE:**
      **State of Louisiana**

**Jordan D. Johnson**
**Louisiana State Prison**
**17544 Tunica Trace**
**Angola, LA 70712**
**IN PROPER PERSON**

**STILES, Judge.**

On December 15, 2021, a jury unanimously found Defendant Jordan D. Johnson guilty of second degree murder, a violation of La.R.S. 14:30.1, and possession of a firearm by a convicted felon, a violation of La.R.S. 14:95.1. On January 25, 2022, the district court sentenced Defendant to life imprisonment for second degree murder and twenty years at hard labor for possession of a firearm by a convicted felon.

Defendant now appeals, assigning two errors through counsel. He has also filed a pro se brief assigning multiple errors. For the reasons set forth below, we affirm Defendant's convictions and sentences.[1]

## FACTS AND PROCEDURAL HISTORY

The current charges stem from a shooting that happened at a party venue known as the "Suga Shack" in Jonesville, Louisiana, on December 15, 2018. A party was held at the Suga Shack on the night of December 14, which both the victim and Defendant attended. While Defendant rapped, the victim was among the partygoers who danced. The victim bumped into Defendant, which precipitated a fight. Defendant pulled out a gun and shot the victim multiple times. Medical testimony revealed that the victim suffered six gunshot wounds, five of which inflicted fatal damage. Defendant fled to Natchez, Mississippi, where he was apprehended by law enforcement around noon on December 15, 2018.

On April 22, 2019, a Catahoula Parish Grand Jury indicted Defendant for second degree murder, a violation of La.R.S. 14:30.1, and possession of a firearm by a convicted felon, a violation of La.R.S. 14:95.1, in two separate bills under

---

[1] Due to the fact that Defendant was charged under two docket numbers at the district court level, he was assigned two docket numbers on appeal. These cases remain consolidated.

separate docket numbers. On November 9, 2021, the district court ordered that the cases be consolidated.

The parties selected a jury on December 13, 2021. Said jury began hearing evidence on December 14, 2021, and found Defendant guilty of both charges on December 15, 2021. On January 25, 2022, the district court sentenced Defendant to life imprisonment for second degree murder and twenty years at hard labor for possession of a firearm by a convicted felon.

Defendant appeals his convictions and sentences. Counsel filed an appellant brief asserting two assignments of error:

1. The trial court erred in excusing a juror under the former version of La. C.Cr.P. art. 401(5).

2. The trial court erred in failing to grant the defense's motion for mistrial, or alternatively, dismiss juror Ti Jolly.

Defendant also filed a pro se brief, asserting multiple errors.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, this court reviews all appeals for errors patent on the face of the record. After reviewing the record, we find no errors patent.

## PRO SE ASSIGNMENT OF ERROR NO. 1

In Defendant's first pro se assignment of error, he alleges there is a defect in the indictment. We will address this assignment first, as he alleges a lack of jurisdiction. Defendant claims "[t]he State of Louisiana Court has nothing to do with this case." He also complains that "[t]here was no presentment to the Federal Magistrate." It is unclear from his brief why Defendant thinks that Louisiana lacks jurisdiction or why he believes this should be a federal matter.

2

Defendant is certainly aware of the indictments in this case, as he has attached copies of them to his pro se brief. He includes a handwritten note on the indictment for second degree murder in which he reiterates his argument that a federal grand jury or a federal magistrate should have been involved. Again, he provides no clear argument to support his claim. Although Defendant repeatedly includes the term "parens patriae" in his argument, this legal concept typically arises in civil or juvenile cases in which the State exercises its inherent authority to protect the weak, e.g., children. *See, e.g., State ex rel. A.J.*, 09-477 (La. 12/1/09), 27 So.3d 247; *State ex rel. D.J.*, 01-2149, (La. 5/14/02), 817 So.2d 26; and *State ex rel. J.A.*, 99-2905 (La. 1/12/00), 752 So.2d 806. Defendant does not explain what the principle has to do with him or how it supports federal authority over his state felony. The first two cases he cites in his brief are Supreme Court cases from the 1930s that address New Deal-era matters. He also mentions "falsifying records," but this appears to be part of his overall claim that the State usurped jurisdiction from the federal government.

After consideration, we find that Defendant fails to raise any recognizable legal basis for relief. This assignment of error lacks merit.

### PRO SE ASSIGNMENT OF ERROR NO. 3

In his third pro se assignment of error, Defendant appears to allege that the state court lacked jurisdiction over him because he is Native American. We address this assignment here because, like the previous assignment, it asserts the state court lacked jurisdiction over him. Defendant cites nothing in the record to show that he is Native American. In fact, he does not cite to the record at all in this portion of his argument. Uniform Rules—Courts of Appeal, Rule 2–12 12.4(B)(3) provides, "The court may not consider the argument on an assignment of error or issue for review if suitable reference to the specific page numbers of the record is not made."

3

Furthermore, our survey of the record has revealed no references to Defendant being Native American. Defendant is identified at various points in the record and throughout the testimony at trial as a "black male" or an "African-American male."

As there is nothing in the record to support this assignment, we find that it lacks merit.

**PRO SE ASSIGNMENT OF ERROR NO. 8**

Having discussed the pro assignments that appear to challenge jurisdiction, we now address Defendant's challenge to the sufficiency of the evidence. Such an argument must be addressed before other non-jurisdictional assignments because a finding of insufficiency would require Defendant's acquittal. *State v. Hearold*, 603 So.2d 731 (La.1992).

> The analysis for sufficiency claims is well-settled:
>
> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

The jury convicted Defendant of second degree murder, a violation of La.R.S. 14:30.1, which states, in pertinent part, "A. Second degree murder is the killing of a

4

human being: (1) When the offender has a specific intent to kill or to inflict great bodily harm[.]"

Multiple eyewitnesses identified Defendant as the man who shot the victim multiple times. Lakisica Bowman, Damon Price, Jasmine Davis, Shyonna Jones, Lakia Weatherspoon, Devonte Lloyd, and Jada Griggs all identified Defendant as the shooter through their testimony at trial. Dr. Christopher Tape, a forensic pathologist, testified that the victim was shot six times, and that any one of five of those gunshots would have been fatal.

Our review indicates that Defendant's argument lacks clarity. He appears to attack the credibility of an unnamed State witness, claiming "one witness change [sic] her statement to help the prosecutor." However, as stated in *Kennerson*, reviewing courts will not second-guess a fact-finder's credibility determination. Also, the argument ignores the plethora of eyewitnesses produced by the State. Even if the unnamed witness's credibility was somehow shown to be vulnerable, there were several other witnesses who named Defendant as the culprit. Defendant also complains that hearsay was improperly used against him, but even inadmissible hearsay will not void a conviction in a *Jackson* analysis. *Hearold*, 630 So.2d 731. Thus, the argument regarding Defendant's second degree murder conviction lacks merit.

The jury also convicted Defendant of possession of a firearm by a convicted felon, a violation of La.R.S. 14:95.1(A)(footnote omitted), which states, in pertinent part:

> It is unlawful for any person who has been convicted of, or has been found not guilty by reason of insanity for, a crime of violence as defined in R.S. 14:2(B) which is a felony or simple burglary, burglary of a pharmacy, burglary of an inhabited dwelling, unauthorized entry of an inhabited dwelling, felony illegal use of weapons or dangerous

5

instrumentalities, manufacture or possession of a delayed action incendiary device, manufacture or possession of a bomb, or possession of a firearm while in the possession of or during the sale or distribution of a controlled dangerous substance, or any violation of the Uniform Controlled Dangerous Substances Law which is a felony, or any crime which is defined as a sex offense in R.S. 15:541, or any crime defined as an attempt to commit one of the above-enumerated offenses under the laws of this state, or who has been convicted under the laws of any other state or of the United States or of any foreign government or country of a crime which, if committed in this state, would be one of the above-enumerated crimes, to possess a firearm or carry a concealed weapon.

Eyewitnesses to the shooting testified at trial that Defendant had a gun in his hand. Juan McDonald, a corrections officer from Mississippi, testified that in 2016, Defendant pled guilty to three counts of aggravated assault in that state. According to McDonald, Defendant shot into a car and wounded three men. Defendant does not refute McDonald's testimony in his sufficiency claim, although in parts of the pro se brief he mentions the murder weapon was not recovered. The evidence discussed above is sufficient to support Defendant's conviction for possession of a firearm by a convicted felon. Thus, this assignment of error lack merit.

## ASSIGNMENT OF ERROR NO. 1

In his first counsel-filed assignment of error, Defendant argues that the district court incorrectly applied a previous version of the relevant statute to excuse a venire member from jury service. Generally, the issue of juror qualification is reviewed for abuse of discretion. *State v. Folse*, 18-153 (La.App. 1 Cir. 9/21/18), 258 So.3d 188, *writ denied*, 18-1743 (La. 4/22/19), 268 So.3d 300.

During the jury selection process, venireman Earnest Barnes revealed that he had a felony conviction that had not been pardoned. The district court excused him, which would have been correct under the version of La.Code Crim.P. art. 401 that existed prior to August 1, 2021. The pre-2021 version read:

6

A. In order to qualify to serve as a juror, a person must:

. . . .

(5) Not be under indictment for a felony nor have been convicted of a felony for which he has not been pardoned by the governor.

The current version of La.Code Crim.P. art. 401, which became effective August 1, 2021, states, in pertinent part:

A. In order to qualify to serve as a juror, a person shall meet all of the following requirements:

. . . .

(5) Not be under indictment, incarcerated under an order of imprisonment, or on probation or parole for a felony offense within the five-year period immediately preceding the person's jury service.

Since the trial in this matter began in December 2021, the newer version of the Code article was clearly in effect. Procedural provisions apply to proceedings after their effective date. *See State v. Brossette*, 163 La. 1035, 113 So. 366 (1927); *see also State v. Tucker*, 22-735 (La.App. 3 Cir. 5/31/23), 368 So.3d 187. Thus, the district court erred by failing to make a further inquiry into Mr. Barnes' felony conviction. Applying the wrong version of the Code article was an error.

The State observes that Defendant's trial counsel failed to raise a contemporaneous objection, and thus argues that the issue was not preserved for appeal pursuant to La.Code Crim. P. art. 841. *See also* La.Code Crim.P. art. 800.[2]

---

[2] Louisiana Code of Criminal Procedure Article 841, cited by Defendant, states, in pertinent part:

An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court that action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.

Article 800 provides similarly but focuses strictly on challenges for cause.

Defendant, however, asserts the error was structural in nature. This court has

explained:

> Generally, only errors that are structural may be reviewed in the absence of contemporaneous objection. *State v. Hongo*, 96-2060 (La.12/2/97), 706 So.2d 419. A structural error is one that, "by its very nature, impacts the entire framework of the trial from beginning to end, without reference to any other trial consideration." *State v. Langley*, 06-1041, pp. 12-13 (La.5/22/07), 958 So.2d 1160, 1168, *cert. denied*, 552 U.S. 1007, 128 S.Ct. 493, 169 L.Ed.2d 368 (2007).

*State v. Day*, 14-708, p. 4 (La.App. 3 Cir. 12/23/14), 158 So.3d 120, 125.

In a footnote, the supreme court has explained:

> A "structural" error is a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991), *reh'g denied*, May 20, 1991. The United States Supreme Court has recognized structural errors only in a "very limited number of cases." *Johnson v. U.S.*, 520 U.S. 461, 468, 117 S.Ct. 1544, 1550, 137 L.Ed.2d 718 (1997), citing *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (a total deprivation of the right to counsel); *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (lack of an impartial trial judge); *Vasquez v. Hillery*, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986) (unlawful exclusion of grand jurors of defendant's race); *McKaskle v. Wiggins*, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) (the right to self-representation at trial); *Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) (the right to a public trial); *Sullivan v. Louisiana*, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (erroneous reasonable-doubt instruction to jury).

*State v. Brown*, 18-1999, p. 18 (La. 9/30/21), 330 So.3d 199, 222 n.13, *cert. denied*,

__ U.S. __, 142 S.Ct. 1702 (2022).

Defendant cites several Supreme Court cases which focused their discussions

on harmless error rather than structural error, but which acknowledged that "there

are some constitutional rights so basic to a fair trial that their infraction can never be

treated as harmless error[.]" *Chapman v. California*, 386 U.S. 18, 23, 87 S.Ct. 824,

827–28 (1967). *See also Gray v. Mississippi*, 481 U.S. 648, 107 S.Ct. 2045 (1987),

and *Gomez v. United States*, 490 U.S. 858, 109 S.Ct. 2237 (1989).

8

In the context of the current analysis, we observe that the *Chapman* court treated a prosecutor's comments on the defendant's failure to testify as subject to a harmless-error analysis. Ultimately, the Supreme Court held the error was not harmless. The *Gray* court held that the improper exclusion of jurors from a jury in a death-penalty case could not be harmless, at least regarding the sentence. The Supreme Court reversed the death sentence and remanded the case. In *Gomez*, the Supreme Court held the error before it could not be harmless, as a federal magistrate had acted without jurisdiction by conducting voir dire.

We have found no structural-error case analogous to the present one, but we find that the present error was not of the type which affected the whole framework of the case. Defendant argues the district court failed to comply with the current law and that the court's error effectively gave the State an additional peremptory challenge. However, the State points out that it used only three of its available twelve peremptory challenges. Thus, the error did not have the practical effect that Defendant alleges.

While we have not found a case on point regarding the current error, we note that in the late 1970s, the supreme court affirmed the denial of a defendant's motion in arrest of judgment and/or motion for new trial, which was based upon the petit jury foreman's possible prior conviction for possession of marijuana. Apparently, the defendant had knowledge of the possible conviction at the time of jury deliberation but failed to object or move for a mistrial prior to the verdict. Additionally, the court noted the defendant failed to demonstrate reasonable diligence because he did not question the prospective juror during voir dire on the subject matter at issue. *State v. O'Blanc*, 346 So.2d 686, 692 (La.1977).

In *State v. Jones*, 03-829 (La.App. 4 Cir. 12/15/04), 891 So.2d 760, *writ denied*, 05-124 (La. 11/28/05), 916 So.2d 140, the fourth circuit found no error in the denial of a motion for new trial where the defendant argued he did not know about a juror's prior conviction of aggravated burglary (the juror had received a first offender pardon). The defendant admitted he had not asked about prior convictions during voir dire. The trial court found the juror was qualified to serve because of the first offender pardon. The fourth circuit found the defendant failed to show the trial court erred in finding the juror was qualified to serve. Additionally, in response to the defendant's argument that having the juror in question on his jury prejudiced him and violated his right to a fair trial, the fourth circuit found the defendant failed to show that he was prejudiced by having the juror seated.

We also note a federal case, *Vasquez v. Hillery*, 474 U.S. 254, 106 S.Ct. 617 (1986), in which the Supreme Court affirmed the lower federal courts' decisions to overturn a murder conviction because African-Americans had been systematically excluded from the grand jury. The court explained:

> When constitutional error calls into question the objectivity of those charged with bringing a defendant to judgment, a reviewing court can neither indulge a presumption of regularity nor evaluate the resulting harm. Accordingly, when the trial judge is discovered to have had some basis for rendering a biased judgment, his actual motivations are hidden from review, and we must presume that the process was impaired. See *Tumey v. Ohio,* 273 U.S. 510, 535, 47 S.Ct. 437, 445, 71 L.Ed. 749 (1927) (reversal required when judge has financial interest in conviction, despite lack of indication that bias influenced decisions). Similarly, when a petit jury has been selected upon improper criteria or has been exposed to prejudicial publicity, we have required reversal of the conviction because the effect of the violation cannot be ascertained. See *Davis v. Georgia,* 429 U.S. 122, 97 S.Ct. 399, 50 L.Ed.2d 339 (1976) *(per curiam); Sheppard v. Maxwell,* 384 U.S. 333, 351–352, 86 S.Ct. 1507, 1516, 16 L.Ed.2d 600 (1966). Like these fundamental flaws, which never have been thought harmless, discrimination in the grand jury undermines the structural integrity of the criminal tribunal itself, and is not amenable to harmless-error review.

*Vasquez*, 474 U.S. at 263–64.

The case cited in *Vasquez* for the Court's "improper criteria" remark is a per curiam opinion issued in *Davis v. Georgia*, 429 U.S. 122, 97 S.Ct. 399 (1976). In *Davis*, the improper criterion was related to the death penalty; specifically, a juror was removed for cause because they expressed a reluctance to impose a death sentence. The *Davis* court reversed the conviction, finding the failure of the court to determine whether the juror should be removed for cause fell under the standard established in *Witherspoon v. State of Illinois*, 391 U.S. 510, 522, 88 S.Ct. 1770, 1777 (1968), which held "that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction."

In the instant case, the death penalty was not an issue. Additionally, the juror in *Davis* was removed for cause, leading the court to wonder if the action served to improperly give the State an additional peremptory challenge it would not have otherwise been entitled to use. That is not an issue in the case *sub judice*; as mentioned earlier, the State did not use its full allotment of peremptory challenges. Finally, while the *Vasquez* court noted a similarity between a grand jury and a petit jury, it also specifically noted the importance of the grand jury:

> Nor are we persuaded that discrimination in the grand jury has no effect on the fairness of the criminal trials that result from that grand jury's actions. The grand jury does not determine only that probable cause exists to believe that a defendant committed a crime, or that it does not. In the hands of the grand jury lies the power to charge a greater offense or a lesser offense; numerous counts or a single count; and perhaps most significant of all, a capital offense or a noncapital offense—all on the basis of the same facts. Moreover, "[t]he grand jury is not bound to indict in every case where a conviction can be obtained." *United States v. Ciambrone,* 601 F.2d 616, 629 (CA2 1979) (Friendly, J., dissenting). Thus, even if a grand jury's determination of probable

11

cause is confirmed in hindsight by a conviction on the indicted offense, that confirmation in no way suggests that the discrimination did not impermissibly infect the framing of the indictment and, consequently, the nature or very existence of the proceedings to come.

*Vasquez*, 474 U.S. at 263 (alteration in original).

The petit jury whose composition Defendant attacks lacks the power of the grand jury, particularly the power or authority to charge a greater offense than requested. Finally, and perhaps most importantly, in the present case, Defendant does not allege that discrimination against a protected class occurred. In *Vasquez*, the defendant did allege discrimination. In that context, the Court noted, "When *constitutional* error calls into question the objectivity of those charged with bringing a defendant to judgment, a reviewing court can neither indulge a presumption of regularity nor evaluate the resulting harm." *Id.* (emphasis added).

Finally, while the issue before the Supreme Court in *Vasquez* involved a violation of a constitutional right, the issue before the court in the instant case involves an exclusion that violates a statute of criminal procedure, not an exclusion that violates a constitutional right. Put simply, racial discrimination is considered an inherently wrong practice that justifies invalidating a criminal trial. In the instant case, a juror was removed from a jury venire due to his status as a convicted felon, not because of his race. Because a petit jury does not hold the same power as a grand jury and because the exclusion violated a statutory right rather than a constitutional one, we find that a violation of La.Code Crim.P. art. 401(A)(5) is not a structural error, is amenable to harmless error analysis, and is also subject to the contemporaneous objection rule.

Taking another tack, Defendant briefly argues that a contemporaneous objection was not needed because the error is clear from the face of the record

pursuant to La.Code Crim.P. art. 920, i.e., an error patent discoverable by a mere inspection of the pleadings without an inspection of the evidence. We note that the error alleged is not one that this court typically recognizes as an error patent. Additionally, it requires examination of the voir dire transcript. In an error patent analysis, this court does not typically examine transcripts, pursuant to La.Code Crim.P. art. 920: "The following matters and no other shall be considered on appeal: . . . (2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." In finding that this court had exceeded the statutory limits of an error patent review, the Louisiana Supreme Court stated:

> To reach its result, the court of appeal went beyond an examination of the face of the record, and expanded its review into the entire record, including the trial testimony, the trial court's extensive reasons for judgment, as well as numerous comments made by the trial court in post trial hearings in an effort to decipher and explain the court's sentence. Such actions are proscribed by Article 920(2).

*State v. Kelly*, 15-484, p. 12 (La. 6/29/16), 195 So.3d 449, 457.

In light of La.Code Crim.P. art. 920 and *Kelly*, we find that the error at issue is not an error patent. Having concluded that the error is neither a structural error nor an error patent, we find that La.Code Crim.P. art. 841 applies, and, thus, a contemporaneous objection was required to preserve the issue for appeal.

In arguing for recognition of an error despite the lack of contemporaneous objection, Defendant states that La.Code Crim.P. art. 921 "provides when an error, defect, irregularity, or variance affects the substantial right of the accused, a judgment or ruling shall be reversed by an appellate court." As the State observes, this is a misleading paraphrase of the article's language, which states: "A judgment or ruling shall not be reversed by an appellate court because of any error, defect,

irregularity, or variance which does not affect substantial rights of the accused."

As we find that this issue was not preserved for review due to the lack of a contemporaneous objection, this assignment of error lacks merit.

## ASSIGNMENT OF ERROR NO. 2

In his second counsel-filed assignment of error, Defendant argues the district court erred by denying his motion for mistrial and his alternative request to dismiss juror Tillman "Ti" Jolly. The juror personally researched the general functions of a trial court on his computer at home and printed out some information on the subject. Jolly approached the district court's secretary with the document, seeking permission to share it with other jurors. The secretary responded in the negative, took the document from Jolly, and delivered it to the judge. When the matter was discussed in open court, Defendant moved for a mistrial, arguing that Jolly had violated the court's instructions.

As both parties acknowledge, mistrial is a remedy only for serious matters. The supreme court has explained, "A mistrial is a drastic remedy warranted only when an error at trial results in substantial prejudice to the defendant which effectively deprives him of a fair trial. *State v. Edwards*, 420 So.2d 663 (La.1982)." *State v. Groves*, 23-46, p. 1 (La. 1/13/23), 352 So.3d 962, 962. "The denial of a mistrial will not be disturbed absent an abuse of discretion. *State v. Givens*, 99-3518, p. 12 (La.1/17/01), 776 So.2d 443, 454." *Brown*, 330 So.3d at 254.

Before discussing the matter on the record, the trial court judge questioned Jolly in chambers and determined that he had researched only the general functions of court, not anything specific to the present case. The trial court explained in open court that another juror, Stevison, had initiated a conversation with Jolly regarding the mechanics of Louisiana jury trials, specifically whether the trial court or whether

14

the jurors would sentence Defendant if found guilty. Stevison had lived in Texas, which may have different trial procedures. In response to Stevison's inquiry, Jolly did his own research on the matter. Apparently, the court's interview with Jolly was not recorded. However, it appears that Defendant's trial counsel and a representative of the State were present. Defense counsel agreed on the record that Jolly had not discussed the facts of the case with Stevison. He argued, however, that Jolly had violated the court's instruction not to discuss the case and moved for a mistrial. The district court noted that Jolly had not discussed the facts of the case with anyone and denied the motion.

In its initial instructions to the jury, the trial court stated:

**THE COURT**:

But I do want to go over this with you. The reason I'm doing this is in Concordia, we went all the way through a jury trial, and I told them at the end, don't read the newspaper, don't go on your computer. This one lady went home and had her husband read the newspaper to her. So we had to declare a miss trial [sic]. So, I'm going to just read this section to you. You have to decide the evidence based -- the case based on the evidence that you hear in the Courtroom. Don't consult any materials outside. Don't go on your internet and search anything. Don't try and find any newspaper articles to look at before you hear this case. Don't go on your computer trying to look anything up. Don't try and go into any law dictionaries or anything. And, don't talk about this between yourselves at all until I tell you you are free to go to the -- into the Jury Room. Because -- don't talk about your husband -- talk to your husbands or your wives and say, What do you think? Don't do any of that, because -- until I tell you that you are free to consider it, you're not supposed to consider it at all or discuss it with anybody, not even your spouses. . . .

Thus, the trial court's instruction presented the jury with a broad prohibition against research. However, as the State points out, juror research or experimentation does not necessarily require reversal. In *State v. Graham*, 422 So.2d 123 (La.1982), some jurors conducted their own blood-coagulation experiment. The defendant sought a new trial, which the district court denied. The supreme court determined that reversal

15

was not required, as there was no reasonable possibility that the experiment had an effect on the verdict. *Id.*

The State also cites *State v. Eason*, 19-614 (La.App. 1 Cir. 12/27/19), 293 So.3d 61, in which some jurors had apparently noticed that the local newspaper had information about the trial at issue. The trial court denied the defendant's motion for mistrial, and the first circuit found no abuse of discretion. The appellate court stated that the defendant failed to show the jurors were "incapable of rendering a fair and impartial judgment." *Id.* at 77. We note that the trial court did grant a defense motion to remove a juror who acknowledged he had *read* a newspaper story about the case at issue. *Id.*

In the present case, after the trial court denied Defendant's motion for mistrial, Defendant moved to remove Jolly from the jury. The trial court responded that the jury had not violated its instructions and that Jolly had simply researched the role of juries and courts. The court then denied the motion. In contrast to the juror in *Eason*, Defendant did not read or research details regarding the case at issue. In light of *Graham* and *Eason*, we find the trial court did not abuse its discretion by denying Defendant's motion for mistrial.

Although doing so within the context of bias, this court addressed the issue of juror removal in *State v. Wilson*, 01-625, pp. 8-11 (La.App. 3 Cir. 12/28/01), 806 So.2d 854, 861–62 (first alteration in original), *writ denied*, 02-323 (La. 9/13/02), 827 So.2d 1121:

> In his third assignment of error, Defendant claims the trial court erred when it failed to remove for cause juror Geneva Comeaux. After being sworn in, Ms. Comeaux informed the trial court that she knew Robin Matte, a witness for the State. Ms. Matte's sister apparently lived with her grandmother but would stay at Ms. Comeaux's house four or five days a week. Ms. Comeaux's familiarity with Ms. Matte, the

Defendant says, raised the possibility that the juror would be partial to the State.

The Fourth Circuit recently analyzed a similar scenario:

Following Officer Belisle's testimony, a conference was held outside the presence of the jury. The court stated that during the questioning of Officer Belisle one juror, Ms. Fentress, stated that she thought she might know the officer from possibly going to high school with him. The court indicated that when asked if she had any contact with him since high school, Ms. Fentress stated no. Further, she indicated she could be fair and impartial in the case. The court indicated that both parties were present when the discussion with the juror took place.

During the conference, counsel for Weaver noted that prior to voir dire the State had indicated the names of the officers it intended to call. Included among the names given was that of Officer Belisle. Yet, the juror failed to mention that she might know Officer Belisle. Accordingly, counsel moved to excuse the juror. The court denied the motion.

Our courts have addressed the issue of whether a juror should be excused when it is discovered during the trial that a juror knows or is related to a witness or victim.

In *State v. Miller*, 95-857 (La.App. 3 Cir. 1/31/96), 670 So.2d 420[,] defendant argued the trial court erred in refusing to remove a juror who admitted she had recently been told that she was related to the victim. On the third day of trial, the juror approached the trial court about a telephone call she received from her aunt the night before. A hearing was held in the trial judge's chambers with the juror, the attorneys, the trial judge, and the minute clerk being present. The juror stated that her aunt told her that the victim's grandfather and her father were first cousins. She also stated that she never visited with these family members when she was growing up so she did not know any of them. The court noted that the juror did not know of the relation during voir dire, nor did she know the victim personally. The trial court stated in court that the juror indicated that the relation would not affect her verdict and decided not to remove the juror from the jury. On appeal, the appellate court concluded that the trial court did not abuse its discretion in refusing to remove the juror because (1) she did not personally know the victim nor did she know of the relationship prior to the phone call; and (2) she informed the trial court that this would not affect her verdict.

In *State v. Holland*, 544 So.2d 461 (La.App. 2 Cir.1989), *writ denied*, 567 So.2d 93 (La.1990)[,] the court was confronted with the problem of deciding whether to excuse a juror who discovered, after

17

the trial had commenced, she might be related to the victim. A juror informed the judge that on the previous evening his daughter had informed him that she received a telephone call from a person who identified himself as a venireman who had been excused. The caller told her that his grandfather was related to the victim and that he [the venireman] believed he was related to the daughter. After informing the judge of the call, the juror testified that he did not know whether he was in fact related to the excused venireman nor was he aware of the degree of kinship between the venireman and the victim. The juror stated that even if he were in some way related to the excused venireman (and thus the victim), it would not affect him or the process of his decision making. He stated that he could be fair and impartial. In upholding the trial court's refusal to excuse the juror, the court delineated the standard to be used in determining if a juror should be excused based on a relationship with a witness or the victim as follows:

> A trial judge is granted great discretion in determining whether to seat or reject a juror for cause, and such rulings will not be disturbed without a showing of an abuse of that discretion. *State v. Jones*, 474 So.2d 919 (La.1985). Disclosure during the trial that a juror knows or is related to a witness or the victim is not sufficient to disqualify a juror unless it is shown that the relationship is sufficient to preclude the juror from arriving at a fair verdict. *State v. Peterson*, 446 So.2d 815 (La.App. 2d Cir.1984). The connection must be such that one must reasonably conclude that it would influence the juror in arriving at a verdict. *State v. Hodgeson*, 305 So.2d 421 (La.1974). (emphasis added.)

*State v. Holland*, 544 So.2d at 465.

> Significantly in the matter subjudice, [sic] Ms. Fentress only stated that she might possibly have known Officer Belisle from high school. If in fact she attended the same high school as the officer, it is apparent that her acquaintance with the officer was very slight, as she apparently did not recognize his name during the voir dire. Additionally, when making the motion to excuse Ms. Fentress, defense counsel noted that the State, "may have massacred" Officer Belisle's name during voir dire. If so, it is quite possible that Ms. Fentress did not recognize the officer's name because of the way the prosecutor pronounced the name. Regardless of the reason for the delayed realization that she might have known the officer from high school, Ms. Fentress indicated to the district judge that she could be fair and impartial. Under these circumstances, it cannot be said that the district court abused its discretion by denying Weaver's motion to excuse this juror. This assignment of error is without merit.

*State v. Weaver*, 99-2177, pp. 5-7 (La.App. 4 Cir. 12/6/00); 775 So.2d 613, 617–618. (Footnote omitted).

In light of the above authorities, the trial court did not err by

refusing to remove juror Comeaux. Therefore, the assignment lacks merit.

In light of *Wilson* and the cases cited therein, we find the that the trial court in the present case did not abuse its discretion. As mentioned earlier, Defendant's counsel acknowledged that Jolly stated he had not researched the facts of the case. Thus, there is no showing that Jolly was unable to reach a fair, impartial verdict.

Defendant also notes that the district court's interview of Jolly was not recorded. However, he acknowledges that despite the general entitlement of a complete record on appeal, conferred by the state constitution, a defendant is only entitled to relief upon a demonstration of prejudice.

Both parties cite this court's discussion in *State v. Chesson*, 03-606, p. 17 (La.App. 3 Cir. 10/1/03), 856 So.2d 166, 178–179, *writ denied*, 03-2913 (La. 2/13/04), 867 So.2d 686:

> While observing that La. Const. art. I, § 19 ensures the right to an appeal based upon a complete record of the evidence on which a judgment is based, the Louisiana Supreme Court has explained that "inconsequential omissions or slight inaccuracies do not require reversal, as an incomplete record may nonetheless be adequate for appellate review." *State v. Deruise*, 98-0541, p. 11 (La.4/3/01), 802 So.2d 1224, 1234, *cert. denied*, 534 U.S. 926, 122 S.Ct. 283, 151 L.Ed.2d 208 (2001). Furthermore, "a defendant is not entitled to relief because of an incomplete record absent a showing of prejudice based on the missing portions of the transcripts." *Id*.

> Defendant has failed to show, or even suggest, how the unrecorded nature of the two bench conferences prejudiced his case. They do not appear to be based on any objection by counsel. Accordingly, this portion of the assignment lacks merit.

Defendant's appellate counsel notes that he was not present for the in-chambers interview. However, this fact does not demonstrate prejudice. Defendant's trial counsel *was* present for the interview and acknowledged that Jolly did not research the facts of the present case. As discussed in the context of Defendant's

other arguments, he has failed to show that he was prejudiced by Jolly's research of the general workings of the trial court system.

For the reasons discussed above, this assignment of error lacks merit.

## PRO SE ASSIGNMENT OF ERROR NO. 2

Defendant further appears to argue that a search warrant issued against him was invalid because it rested on an invalid identification of him as the shooter. His argument, however, lacks clarity and is interspersed with references to the allegedly improper grand jury proceedings. Defendant also questions the credibility of some of the State's witnesses, but does so in the context of his argument against the warrant.

Defendant filed a motion to suppress at the trial court, but that motion focused on discovery issues, rather than any search warrant. Due to the lack of a motion to suppress any search warrant in this case, the issue was not preserved for review. *State v. Guillory*, 20-353 (La.App. 3 Cir. 5/12/21), 318 So.3d 368. Defendant again fails to include pertinent record references, which is necessary pursuant to Uniform Rules—Courts of Appeal, Rule 2–12.4(B)(3).

For the reasons discussed, this assignment of error lacks merit.

## PRO SE ASSIGNMENT OF ERROR NO. 4

Defendant also suggests that he was a victim of malicious prosecution but lists only possible legal issues without providing argument. He further references malicious prosecution in relation to his argument that Louisiana did not have jurisdiction over this case. Defendant's actual argument regarding why this would be the case; he simply lists a string of federal cases and a pair of federal rules without actually developing an argument. Thus, as Defendant has failed to give this court

20

anything to review, he has failed to meet the requirements of Uniform Rules—

Courts of Appeal, Rule 2–12.4(A)(9) and (B)(4), which provide:

> A. The brief of the appellant shall contain, under appropriate headings and in the order indicated:
>
> . . . .
>
> (9) the argument, which shall contain:
>
> (a) appellant's contentions, with reference to the specific page numbers of the record and citations to the authorities on which the appellant relies;
>
> (b) for each assignment of error and issue for review, a concise statement of the applicable standard of review, which may appear in the discussion or under a separate heading placed before the discussion; and
>
> (c) for each assignment of error and issue for review which required an objection or proffer to preserve, a statement that the objection or proffer was made, with reference to the specific page numbers of the record[.]
>
> . . . .
>
> B.
>
> . . . .
>
> (4) All assignments of error and issues for review shall be briefed. The court may deem as abandoned any assignment of error or issue for review which has not been briefed.

*See* Uniform Rules—Courts of Appeal, Rule 2–12.4(B)(3).

For these reasons, this assignment of error lacks merit.

## PRO SE ASSIGNMENT OF ERROR NO. 5

In this pro se assignment of error, Defendant asserts that his trial counsel was ineffective. Ineffectiveness of counsel requires a showing of both a deficient performance by counsel and prejudice to the defendant's case. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984).

21

One of Defendant's complaints is that his trial counsel failed to file a notice of appeal or file an appeal brief. Although Defendant filed a pro se motion and obtained this appeal himself, the Louisiana Appellate Project has since filed the merits brief discussed above. Given the existence of the counsel-filed merits brief, Defendant has not been prejudiced by his trial counsel's apparent inaction.

Defendant also complains that his trial counsel prevented him from testifying. This argument is better suited to the post-conviction relief process, where the record can be developed further, as the tactical consultation regarding whether to testify was a matter between trial counsel and Defendant and, thus, does not appear in the record currently before this court. As this court has explained:

> Sorting out these competing, and possible conflicting defense theories or strategies will necessitate information regarding communications between Defendant and his trial counsel. Since attorney and client communications are necessarily outside this record, we find that this issue should properly be relegated to the post-conviction relief process, wherein the parties will be able to further develop the record. *State v. Miller*, 99-192 (La.9/6/00), 776 So.2d 396, *cert. denied*, 531 U.S. 1194, 121 S.Ct. 1196, 149 L.Ed.2d 111 (2001).

*State v. Kidd*, 22-227, pp. 9–10 (La.App. 3 Cir. 9/14/22), 348 So.3d 243, 249, *writ denied*, 22-1596 (La. 1/25/23), 354 So.3d 9.

Defendant also argues that his trial counsel failed to present mitigating evidence and failed to properly challenge the credibility of the State's witnesses. These contentions should also be relegated to the post-conviction relief process to give the parties an opportunity to develop the record. We note that Defendant has made no record citations to support or illustrate his current arguments.

Defendant's argument regarding the lack of an appeal lacks merit. The remainder of his ineffective assistance of counsel claims are relegated to the post-conviction relief process.

## PRO SE ASSIGNMENT OF ERROR NO. 6

Defendant includes a page with his pro se brief that may assert a federal Fourteenth Amendment violation. However, the page simply includes a list of possible violations without complete sentences. To the extent this might be considered an assignment of error, it lacks merit pursuant to Uniform Rules—Courts of Appeal, Rule 2–12.4.

## PRO SE ASSIGNMENT OF ERROR NO. 7

Defendant also appears to argue a violation under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963), i.e., non-disclosure by the State of exculpatory evidence. However, he makes no demonstration that such evidence actually exists. Defendant claims the State made a leniency deal to obtain perjured witness testimony, but he offers only his bare claim that this occurred. As with the rest of his pro se brief, Defendant provides no record references. In addition, he fails to provide record page references, as required by Uniform Rules—Courts of Appeal, Rule 2–12.4(B)(3). Furthermore, Defendant seems to be focused on a lone witness. Thus, even if this allegation were true, the State would still have a number of witnesses who testified that he was the killer, as shown under the sufficiency of evidence review above.

For these reasons, this assignment of error lacks merit.

## PRO SE ASSIGNMENT OF ERROR NO. 9

In another argument, which we will treat as a ninth assignment of error for the sake of organized review, Defendant appears to claim that the jury instruction failed to inform the jury that he was innocent until proven guilty. At trial, the trial court gave the following instruction to the jury:

> The Defendant is presumed to be innocent until each element of the crime necessary to constitute his guilt is proven beyond a reasonable doubt. The defendant is not required to prove that he is innocent. Thus, the Defendant begins the trial with a clean slate. The burden is upon the State to prove the Defendant's guilt beyond a reasonable doubt. In considering the evidence, you must give the Defendant the benefit of every reasonable doubt arising out of the evidence or lack of evidence. If you are not convinced of the guilt of the Defendant beyond a reasonable doubt, you must find him not guilty. . . .

As the jury instruction did in fact inform the jury that Defendant was innocent until proven guilty, this argument lacks merit.

## PRO SE ASSIGNMENT OF ERROR NO. 10

Defendant also seemingly alludes to purported prosecutorial misconduct, but makes no substantive argument that would permit review. He merely makes bare claims of various actions of misconduct regarding witnesses, such as witness coaching. Moreover, the arguments are devoid of record page references. This assignment lacks merit. *See* Uniform Rules—Courts of Appeal, Rule 2–12.4(A)(9) and (B)(3).

## PRO SE ASSIGNMENT OF ERROR NO. 11

In his final pro se argument, Defendant argues that his convictions violate the federal Tenth Amendment. Defendant provides no record references, no legal citations, and does not cite the text of the Amendment. This final argument lacks merit. *See* Uniform Rules—Courts of Appeal, Rule 2–12.4(A)(9) and (B)(3).

## DECREE

For all of the reasons discussed above, we affirm Defendant's convictions and sentences. Defendant's claims of ineffective assistance of counsel are relegated to post-conviction relief.

**AFFIRMED.**

24